# Berkebile, Appellant, *v.* Brantly Helicopter Corporation.

480

Argued June 15, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent.)

*Laurence H. Eldredge,* for appellant.

*Sidney L. Wickenhaver,* with him *Montgomery, McCracken, Walker & Rhoads,* for appellee.

OPINION BY JACOBS, J., September 21, 1971:

Cloyd G. Berkebile was killed on July 9, 1962, when the Brantly B-2 helicopter he was piloting crashed near Franklin, Pennsylvania. This action was brought by his executrix under the wrongful death and survival

statutes against Brantly Helicopter Corporation which manufactured the helicopter. The case was tried before a jury and a verdict was returned for the defendant. After plaintiff's new-trial motion was denied, judgment was entered on the verdict and plaintiff appeals alleging errors in the charge and in rulings on evidentiary matters.

The case was tried on the theory of strict liability for physical harm by the supplier of a defective chattel under Restatement (Second) of Torts §402 A (1965). Section 402 A was adopted as the law of Pennsylvania in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). and reads in pertinent part as follows: "(1) One who sells any product in a defective condition unreasonably dangerous to the user . . . is subject to liability for physical harm thereby caused to the ultimate user. . . . (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product. . . ."

Decedent took delivery of the helicopter on January 27, 1962, and on the date of the crash it had 198.5 hours in the air. Decedent received instructions on operating the helicopter from defendant's distributor and on March 29, 1962, he was licensed to fly it. On July 9, 1962, decedent flew alone from his home to an airport at Franklin, a distance of 91 miles. There he asked for 100-octane gasoline which was not available. The airport manager offered to get the gasoline from an airport in Oil City ten miles away. Decedent, however, said he had enough gasoline to fly to Oil City and took off. When he had flown only two miles his helicopter fell into a wooded area and he was killed. While the helicopter was still in the air, and before it disappeared into the trees, a seven-foot section of one of the three rotor blades broke off.

The plaintiff advanced two theories of liability: (1) that the blade broke because it was defectively con-

structed and (2) that the helicopter was dangerously defective in its autorotational characteristics. The first theory was properly presented to the jury and presents no problem. On the second theory the plaintiff argues that the court's charge improperly removed that issue from the jury.

When the engine of an airborne helicopter stops, the helicopter will fall to the ground unless the rotor blades are placed in autorotation. When the blades are placed in autorotation, their angle differs from that of flight and they will continue to revolve and the plane may be glided to a safe landing. If the blades are not put in autorotation they may be snapped off in the air as the plane falls by hitting against stops which are necessary for their control while on the ground. The helicopter is placed in autorotation by pushing the "collective pitch stick" all the way down.

Plaintiff contended at trial that following an engine failure the pilot in a B-2 helicopter is afforded insufficient time to go into autorotation. The time was variously estimated by the witnesses to be between one and two seconds. Portions of the testimony supported plaintiff's contention that the pilot had only one second and that one second was insufficient. Defendant presented evidence to show that decedent ran out of gasoline. Defendant contended that decedent then either failed to push the stick forward or did not push it soon enough.

If, as contended by plaintiff, the helicopter did not allow the average pilot sufficient time to go into autorotation was there a defective condition under §402 A? In order to be defective it is not necessary that errors be made in manufacture; a properly made product is defective if its design is unreasonably dangerous. *Dyson v. General Motors Corp.*, 298 F. Supp. 1064 (E.D. Pa. 1969) ; W. Prosser, Torts 659 (4th ed. 1971). "The prevailing interpretation of 'defective' is that the prod-

uct does not meet the reasonable expectations of the ordinary consumer as to its safety." Prosser, supra at 659. It is thus apparent that a helicopter whose design does not allow an average pilot to go into autorotation in time to save his life is sold in a defective condition.

The main problem raised is the lower court's treatment of the alleged defective condition of the autorotational design. The plaintiff argues that the court never submitted the issue to the jury, having determined as a matter of law that the one-second time allowed was sufficient. The defendant contends that the issue was submitted to the jury, but argues that it never should have been.

A reading of the court's charge convinces us that the issue was not submitted to the jury. The trial judge charged properly that damage sustained during abnormal use of a product is not evidence of a defect. However, he then charged that failure to push the "collective pitch stick" down in one second was abnormal use. This conclusion followed naturally from his statement earlier in the charge that having one second to put the helicopter into autorotation is enough because the Federal Aviation Agency's regulations say that one second is enough. The charge further states that if the rotor blade flew off because of a dangerous condition in its make-up, then that would be the proximate cause, but if the blade flew off because the engine failed from lack of gasoline, then that was the proximate cause and not any dangerously defective condition. Plaintiff's counsel specifically excepted to this charge on proximate cause, pointing out the further question of whether there was sufficient time to go into autorotation.

The B-2 helicopter had been inspected by the FAA prior to sale to the public. It appears that the original rotor blade did not have the required autorotative characteristics, but after the addition of certain tip weights it did meet the requirements. It was tested and the

FAA issued type and airworthiness certificates. In telling the jury that one second was adequate time to go into autorotation, and thus removing the question of whether such fact presented a dangerous condition, the court relied on the following FAA regulation: "In taking corrective action, the time delay for all flight conditions shall be based on the normal pilot reaction time, except that for the cruise condition the time delay shall not be less than one second." 14 C.F.R. §6.121, as in effect 1959-1962. The court en banc concluded that the regulation should be the standard in judging whether the helicopter was defective and unreasonably dangerous. The court further concluded that the manufacturer should be able to rely on the federal regulatory standard and that if the jury could fix other standards the regulation would become meaningless.

The Federal Aviation Agency's standards are far from meaningless. Considering the preeminence of the federal government in the field of air safety and the importance and standing of the FAA we would incline to the view that failure of the manufacturer to comply with the regulations would be negligence *per se*.[1] Our view is strengthened by the fact that the FAA is empowered to lay down minimum standards and violation of such standards, if the proximate cause of the injury, should submit the violator to liability.

In this case, however, we are not faced with a violation of the regulations, we are faced with compliance. Compliance with a law or administrative regulation relieves the actor of negligence *per se,* but it does not establish as a matter of law that due care was exercised. *Grand Trunk Ry. Co. v. Ives,* 144 U.S. 408 (1892) ;

---

[1] See *Ridley v. Boyer,* 426 Pa. 28, 231 A.2d 307 (1967), where the Court approved a charge submitting to the jury the question of whether ICC safety regulations were violated and, if so, whether the violation was the proximate cause of the accident. See also *Galenby v. Altoona Aviation Corp.,* 407 F.2d 443 (3d Cir. 1968).

*Maize v. Atlantic Refining Co.,* 352 Pa. 51, 41 A.2d 850 (1945) ; *Hubbard-Hall Chemical Co. v. Silverman,* 340 F.2d 402 (1st Cir. 1965). "The care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are reasonably to be anticipated as a result of the conduct in question." *Maize,* supra at 56-57. Compliance with the statute or regulation is admissible as evidence of the actor's exercise of due care, but such compliance "does not prevent a finding of negligence where a reasonable man would take additional precautions." Restatement (Second) of Torts, §288 C (1965).

However, negligence is not an issue in this case. "The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product." Restatement (Second) of Torts, §402 A, comment a, and section (2)(a) (1965). Since the seller's due care is immaterial, compliance with the FAA regulations was offered to show that the helicopter was not unreasonably dangerous within the meaning of §402 A. It was certainly evidence to be considered by the jury but, by analogy to the negligence cases, we hold that it was not conclusive and the issue was entitled to go to the jury.

Judgment reversed and a new trial granted.