**Laurette R. RAYMOND et al.,**
**Plaintiffs-Appellees,**

v.

**RIEGEL TEXTILE CORPORATION,**
**Defendant-Appellant.**

**No. 73–1151.**

United States Court of Appeals,
First Circuit.

Submitted July 16, 1973.

Decided Sept. 20, 1973.

Shane Devine and Devine, Millimet, Stahl & Branch, Manchester, N. H., on brief for defendant-appellant.

Dort S. Bigg, and Wiggin, Nourie, Sundeen, Pingree & Bigg, Manchester, N. H., on brief for plaintiffs-appellees.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

■ This is an appeal from an award of damages for injuries resulting from an accident in which appellee, Therese Raymond, a child of twelve, was burned when a nightgown made of flannelette material manufactured by appellant burst into flames within two seconds of contact with a hot grill on an electric range.

The law applied in this diversity suit by the court below was the law of New Hampshire: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . ."[1]

■ The district court as trier of fact found that the "flannelette material was unreasonably dangerous to the user" because of "its short ignition rate and the lack of any effective fire retardant materials in the fabric." The record indicates that from the evidence presented the district court's findings are adequately supported.

Appellant challenges the court's award on the ground that the material in question met the standards of flammability established by the federal government under the Flammable Fabrics Act, 15 U.S.C. §§ 1191 et seq. Appellant further asserts that the 1967 amendment to the Act providing that "this chapter is intended to supersede any law of any State . . . inconsistent with its provisions", 15 U.S.C.A. § 1203, precludes New Hampshire from applying any other standard.[2]

The central issue presented by this case is, therefore, whether the applicable New Hampshire standard of tort liability is "inconsistent" with the provisions of the federal Act. The Flammable Fabrics Act provides for injunction, seizure of materials, and criminal penalties,[3] for violation of flammability standards promulgated by the Secretary

---

1. Restatement (Second) of Torts § 402A (1965) adopted by New Hampshire in Buttrick v. Lessard, 110 N.H. 36, 260 A.2d 111 (1969).

2. It does not appear from the record whether the argument concerning the supremacy clause was made to the district court. In any event, that court did not discuss the clause in its opinion. Instead, it addressed itself to the claimed inadequacy of the federal standards. *See, e. g.,* E. Swartz, Products Liability—The Torch Cases, 76 Case & Comment 5–6 (1971).

3. 15 U.S.C.A. §§ 1195 and 1196.

of Commerce pursuant to 15 U.S.C.A. §§ 1193 and 1201.[4] The Act makes no provision for private relief for those harmed in accidents involving flammable fabrics.

The legislative history indicates that the 1967 amendments which included the "supremacy clause" were, as a group, intended to increase the protection of consumers. The amendments were designed to permit the Secretary of Commerce "to continually update flammability standards to keep pace with new technological processes developed by the industry". 1967 U.S.Code Cong. & Admin.News, p. 2134. Up until that time, because legislative action was required, no new standards had been promulgated for fourteen years. By creating a means for the Secretary of Commerce to make revision through administrative process, the Congress hoped to facilitate an improvement of the applicable standards which were then thought to be deficient.[5] We note that at the time of this case the standards had not as yet been updated.

The evident solicitude of Congress for the plight of burn victims who are most often the very young and the aged [6] must be taken into consideration when interpreting the "supremacy clause". We hold, therefore, that New Hampshire's application of its strict liability standard in tort actions involving injury from burning clothing is not "inconsistent with [the] provisions" of the Flammable Fabrics Act.

The district court considered appellant's compliance with federal standards as relevant to a defense to the claim, see Schreiber & Rheingold, Products Liability 1:60 (P.L.I. 1967); 1 Frumer & Friedman, Products Liability § 8.07[1]. However, the federal standard was rejected as a measure of defectiveness or unreasonable danger under New Hampshire law.[7] The district court measured "unreasonable danger" in light of approximately normal conditions like those in effect when a garment is being worn and is accidentally and non-negligently exposed to heat or flame. The judge, as trier of fact, found that the ignition rate of the garment in question left no time for instinctive reaction between the time of impingement of the flame and the time the material burst into flames.[8] This is a standard fully consistent with the Restatement Rule which is geared to protect the consumer from conditions not contemplated or apparent that are unreasonably dangerous for *normal* handling and consumption. Restatement

4. The Act provides for hearings where findings about the materials in question can be made and regulations promulgated, 15 U.S.C.A. § 1193(b). It also provides for challenge by interested parties, § 1193(e)(1), and for continuing study of new testing methods and new methods of reducing flammability, § 1201.

5. *See* 1967 U.S.Code Cong. & Admin.News, p. 2132.

6. *Id.* at 2133; "Each year in the United States alone more than 8,000 persons die from burns and another 300,000 are hospitalized. A special heartbreak is that 40 percent of these victims are children under 10 years of age." James H. Winchester, New Techniques Improve the Care of Burns, The Modern Hospital, Vol. 108, No. 3, p. 101 (March, 1967).

7. *See* LaGorga v. Kroger Co., 275 F.Supp. 373 (W.D.Pa.1967) (refusal to grant judg-

ment n. o. v. for defendant where the jury awarded damages for burns due to a jacket that both parties stipulated was not in violation of 15 U.S.C.A. § 1191 et seq.); Ingalls v. Messner, 11 Wis.2d 371, 105 N.W.2d 748 (Wis.1960) (sustained recovery in tort suit for burns where the fabric met Federal Flammability Standards); Sherman v. Lowenstein & Sons, Inc., 28 A.D.2d 922, 282 N.Y.S.2d 142 (2d Dept.1967) (defendant's contention that he could not be held liable because of compliance with 15 U.S.C.A. § 1191 was rejected).

8. Appellant's other contention concerning an exhibition of burning a fabric in the courtroom is also without merit. The trial judge has discretion in admitting evidence, Walker v. Firestone Tire & Rubber Co., 412 F.2d 60, 63 (2d Cir. 1969), and while we might have found it error to permit the demonstration before a jury, we find no fault with the court's ruling.

**1028**

(Second) of Torts § 402A, comments g & h (1965).

■ It is an accepted principle that standards of criminal statutes need not control tort recovery:

"A tort is not the same thing as a crime, although the two sometimes have many features in common . . . ." Prosser, The Law of Torts 3d ed. 7 (1964).

"Criminal cases may be useful as guides to the type of conduct which the law will condemn or excuse, and the existence of a criminal statute may indicate a legislative policy which the courts will further by creating tort liability. But such conclusions do not always follow, and the criminal law must be regarded as a very unreliable analogy to the law of torts." *Id.* at 9.

The dichotomy between criminal and tort law has been codified in the Restatement of Torts: "Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions". Restatement (Second) of Torts § 288C (1965). While this section applies to negligence cases, it also reflects a general assumption that criminal law has no necessary implications for tort law: an "enactment or regulation may . . . provide only for criminal liability, and not for civil liability . . . In such cases the initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, the court is under no compulsion to accept it as defining any standard of conduct for pur-

poses of a tort action." *Id.* at § 286 comment d.[9]

■ Since the Flammable Fabrics Act did not provide private civil remedies and does not preclude state development of such remedies, the states are not limited to applying the federal criminal and regulatory standards in civil cases involving burns from ignited fabrics.

Affirmed.

---

9. *See also* Hubbard-Hall Chemical Co. v. Silverman, 340 F.2d 402 (1st Cir. 1965). The court in applying the Federal Insecticide, Fungicide and Rodenticide Act stated: "Nor is it argued that in enacting the Federal . . . Act, Congress had occupied the whole field of civil liability between private parties in tort actions . . . . [D]efendant's product having had its impact in Massachusetts upon plaintiffs' intestates, the governing law is the local common law of

this Commonwealth." *Id.* at 405; Stevens v. Parke, Davis & Co., 9 C.3d 51, 107 Cal. Rptr. 45, 507 P.2d 653 (1973) (compliance with Federal Food, Drug and Cosmetic Act did not preclude tort liability); Arata v. Tonegato, 152 Cal.App.2d 837, 314 P.2d 130 (Dist.Ct.App.1957) (same); *Contra,* Lewis v. Baker, 243 Or. 293, 413 P.2d 400 (1966) (Food and Drug Administration approved drug is as a matter of law reasonably safe).