**Mrs. J. D. JOHNSON et al.,**
**Plaintiffs-Appellees,**

v.

**HUSKY INDUSTRIES, INC.,**
**Defendant-Appellant.**

**No. 75–2219.**

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1976.
Decided Sept. 13, 1976.

N. R. Coleman, Jr., Milligan, Coleman, Fletcher & Gaby, Greeneville, Tenn., Jerry J. Phillips, Univ. of Tenn., College of Law, Knoxville, Tenn., for defendant-appellant.

Charles R. Terry, Morristown, Tenn., Edward M. Swartz, Boston, Mass., for plaintiffs-appellees.

Before WEICK and EDWARDS, Circuit Judges, and GREEN,* Senior District Judge.

BEN C. GREEN, Senior District Judge.

On November 8, 1972 the four members of the Clyne Robinson family, being Mr. Robinson (age 32), his wife, Edna Faye (age 28), and their two children, Robin (age 10) and Terry (age 8), died from carbon monoxide asphyxiation as a consequence of burning ten pounds of charcoal briquets for heating purposes inside a closed house. Two empty five-pound bags of charcoal manufactured by defendant-appellant, Husky Industries, Inc., were found in the Robinson residence. The charcoal which Mr. Robinson purchased shortly before the date in question was packaged by appellant on May 30, 1971. The bags in which the charcoal was packaged had been manufactured to appellant's specifications pursuant to an order placed by appellant on April 13, 1971.

* The Honorable Ben C. Green, Senior District Judge, for the Northern District of Ohio, sitting by designation.

Plaintiffs-appellees, the parents of Mr. and Mrs. Robinson and the grandparents of the children, brought this wrongful death action seeking to recover compensatory and punitive damages from appellant. No issue is raised on this appeal as to appellees' standing under Tennessee law to maintain such an action. The plaintiffs' theory of the case was that the defendant was strictly liable in tort for failure to provide an adequate warning of the danger of asphyxiation from use of the charcoal indoors. Each of the bags carried the legend "CAUTION—FOR INDOOR USE—COOK ONLY IN PROPERLY VENTILATED AREAS".

The matter was tried to a jury, and the trial court submitted the action under instructions as to both compensatory and punitive damages. The jury returned verdicts in appellees' favor awarding both compensatory and punitive damages in equal amounts for each of the decedents. For the death of Mr. Robinson the jury awarded $75,000.00 compensatory and $75,000.00 punitive damages. The award as to Mrs. Robinson was $37,500.00 for each element of damage. For the deaths of the two children the verdicts were $50,000.00 compensatory and $50,000.00 punitive damages each. Consequently, the total recovery was $425,000.00, one-half of which was for punitive damages.

Appellant asserts that error was committed by the district court in several regards. It is urged that the issue of liability should not have been submitted to the jury for the reasons that the plaintiffs' proof failed to make out a prima facie case of inadequacy of warning, that defendant's evidence of compliance with industry standards was so overwhelming it should have been given conclusive weight that the risk of asphyxiation is so commonly known that no warning was required, that the use of the charcoal indoors for heating constituted a misuse for which defendant could not be held responsible, and that plaintiffs failed to prove that any of the decedents read the warning (adequate or inadequate) so that the warning could be deemed a causal link to their deaths. Appellant also complains of the trial court's refusal to give the jury proffered instructions on the issues of industry standards, the necessity of proof that the decedents actually read the warnings and that any awards made would not be taxable income under the federal laws. It is further contended that the trial court erred in permitting the plaintiffs' expert witness, a chemical engineer, to express his opinion on the adequacy of the warning. The sufficiency of the evidence to support the verdicts is challenged on the basis of the competency of the expert testimony offered as to compensatory damages and the lack of evidence to warrant submitting the issue of punitive damages to the jury.

For the most part, appellant's assignments of error on issues relating to liability pertain to matters which were submitted to the jury under instructions reflecting appellant's theory of the case. The trial court's charge included instructions consistent with appellant's arguments as advanced herein. Leading into more detailed instructions on the matters of defense the trial court advised the jury:

The defendant Husky claims that its packages adequately warned of the danger of using charcoal indoors in an unventilated area; that its charcoal was not unreasonably dangerous when used for ordinary purposes; that the use to which the decedents put the charcoal was not reasonably foreseeable by the defendant; that the decedents were putting the product to an unintended use, using it for heating rather than cooking purposes, which was an intervening cause of the deaths of Robin Josea and Terry Paul Robinson; that the plaintiffs' decedents Mr. and Mrs. Robinson voluntarily assumed the risk of injury or death, by thus using such product in disregard of the warning printed on the package; that any inadequate warning by the defendant was not a proximate cause of the decedents' deaths; and that Husky was not grossly negligent in any manner.

We have considered the more expansive instructions given by the trial court, and

find that they properly covered the subjects mentioned in the prefatory paragraph. More particularly, taking the instructions as a whole, we find no error in the trial court's refusal to give appellant's proffered instruction that it was incumbent upon plaintiffs to prove that the decedents actually read the warnings on the bags in order to establish proximate causation, a proposition which would have been virtually impossible to establish.

Consequently, only if it can be said that as a matter of law that appellant was entitled to judgment in its favor, or that prejudicial error was committed in the course of the trial, can the finding of liability be set aside based on the reasons advanced herein.

■ From the record in this action we cannot hold that appellees failed to make out a prima facie case as to the adequacy of the warnings. Appellees presented evidence as to the substantial hazards of burning charcoal briquets in a closed environment. At that point we believe that an issue of fact was raised as to whether the warning on the bag, which warning presupposed an indoor use, was adequate to advise an average person as to the nature and extent of the risk inherent in indoor use. While we believe that the matters of misuse (encompassing proximate cause and intervening cause) and assumption of risk are close questions, which if we were triers of fact might have been resolved differently, they were issues of fact for the jury and were resolved adversely to appellant. The jury's decision must stand.

Appellant's contentions regarding the court's alleged errors as to the effect of industry standards involve, to a significant degree, a New York statute. It is represented that in 1971 New York was the only state having regulatory legislation as to labeling of charcoal bags, which required precisely the warning that appellant's bags carried.

The jury was advised by the court that the parties had stipulated that the legend which appellant's bag carried represented "the standard of the industry at that time".

There was, however, testimony from which the jury could have concluded that the adoption by the industry of the warning which the New York statute mandated was a matter of expediency so that a uniform bag could be utilized in all states.

■ The New York statute was read in full text to the jury after testimony regarding adoption by the industry of the warning required therein had been received. In the course of such testimony it was reiterated that the warning on appellant's bags conformed to "the standards, practices and customs and usages of the charcoal industry as a whole". After the statute was read to the jury the court advised the jury "[T]hat is the law of New York. It is not the law in Tennessee and was not at the pertinent time". We find no merit in appellant's exception to that cautionary instruction. The statute in question was solely a New York enactment. Whether appellant's conformance therewith under industry standards was sufficient to avoid liability under Tennessee law was a separate question.

■ This leads to appellant's argument that a directed verdict should have been granted based upon the proof of compliance with industry standards. We find no basis in this record deviating from the generally accepted rule that industry standards may be proven as some evidence of care but are not conclusive on the matter. *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 481 (6th Cir., 1973). Consequently, we do not find that the trial court erred in rejecting appellant's proposed jury instruction on industry standards which went beyond this general rule.

■ The remaining assignment of error bearing on the matter of liability, as opposed to damages, pertains to testimony from appellees' expert as to his opinion concerning the adequacy of the warning. The witness, a consulting engineer with expertise in combustion, testified that he did not believe that appellant's charcoal briquets should be used indoors. In the course

of explaining his reasons in support of that belief he testified as follows:

. . . That is one reason the "Grill Time" charcoal briquets should not be used indoors. I have other reasons.

Q Would you give them?

A For that particular, I have looked at it, looked at the package of that product closely and I have been involved with labels and warnings throughout the past 25 or 30 years.

That bag measures approximately 14 to 15 inches high. On the lower inch, 13 inches down from the top are written words: "CAUTION—FOR INDOOR USE" on one line. Another line half an inch below that line on the extreme end of the side and bottom, it says: "COOK ONLY IN PROPERLY VENTILATED AREAS."

In my opinion, that is not a warning— (Interrupted).

MR. COLEMAN: I object, your Honor.

THE COURT: It is his opinion.

Objection overruled.

A (Continued)—because it does not alert anyone to take action for himself, herself or their family.

What it says to me is that caution for indoor use, I am misled by it. I believe I would be misled by it if I were a lay person and did not have a feel of what happens when you burn charcoal briquets.

The other thing that concerns me, if I read the next line: "USE IN PROPERLY VENTILATED AREAS," it would confuse me. It is vague. I am a ventilation engineer and I design many systems, have a feel of air. I can tell you what happens to the air that goes around this room, how air is moving into the room, where the air respiration is going and what's in the air you are breathing. This is my profession.

To talk of properly ventilated indoor space does not make sense. It is not practical. In most of the homes in America the facilities to properly ventilate for the use of charcoal [are] impractical. You would have to have a kitchen hood, you would have to have an enclosure, you would have to have an exhaust fan to remove the concentration of carbon monoxide from the breathing space or living space in the home. It is just not practical. There are times when one might open all the doors and all the windows in the home and have a good breeze blowing and if cross ventilation was such and you weren't in that room, in another room being short-circulated, you might say very much concentration would build up, 100, 200 [parts] per million, or you may leave the premises and go out visiting somebody. Okay, there is an opportunity there where there is an exception, but the rule to say that one would burn or have control of charcoal with carbon monoxide that it emits, is highly unlikely that properly ventilation can be accomplished in a home.

And this is the reason I am saying that, it is vague, it is misleading.

THE COURT: This is your opinion?

THE WITNESS: Yes, it is my opinion.

It must be noted that the foregoing testimony was not elicited in direct response to an inquiry as to the expert's opinion as to the adequacy of the warning. Rather, it was in further elucidation of his opinion that appellant's product should not be burned indoors. Further, upon cross-examination the same subject was opened up when defense counsel asked the witness "What warning labels were being used by the industry in May, 1971?" The witness responded "Sir, I found no warning labels. A warning label to me should have an impact, alert me. I don't call that a warning label."

Under these circumstances, we do not believe that prejudicial error was committed by the trial court in permitting the witness to testify as to his opinion regarding the adequacy of the legend carried on the bags.[1] The testimony was sufficiently

---

1. Had Article VII of the Federal Rules of Evidence (Opinions and Expert Testimony) been in effect at the time of trial there is no doubt but that the reception of such evidence would have been within the trial court's discretion.

650

related to the areas of his expertise as to be a permissible extension thereof in the context in which it was given.

The balance of appellant's contentions pertain to matters of damages.

■ Appellant complains of the trial court's refusal to charge the jury that any award would be exempt from federal taxation. There is authority within this circuit that in actions governed by federal law the giving of such an instruction rests within the trial court's discretion. *Bach v. Penn Central Transp. Co.*, 502 F.2d 1117 (6th Cir., 1974). However, this suit is controlled by Tennessee law which, at this time, holds that the matter of taxability of a jury verdict is not to be included in jury instructions. *Stallcup v. Taylor*, 463 S.W.2d 416 (Tenn.App., 1970); *Dixie Feed and Seed Co. v. Byrd*, 52 Tenn.App. 619, 376 S.W.2d 745, 749 (1963). It therefore follows that the court's ruling was correct.

We do not find appellant's arguments regarding the alleged errors concerning the foundation for the compensatory damage awards to be persuasive.

■ Appellant contends that as to the adult decedents appellees' economist gave undue weight to abstract data and that as to the minor decedents the entire evidence is grossly speculative. While it is true that the economist did incorporate general economic projections, particularly as to the minors for whom no historical earnings background could be available, the actual earnings histories of the adult decedents were brought out and appellant had a full range of cross-examination to demonstrate that if the assumptions made as to both the adult and minor decedents were incorrect the conclusions predicated thereon would be equally unreliable. The issue of compensatory damages was submitted to the jury under appropriate instructions. The jury's verdicts represented approximately 30% of the economist's projections for the loss arising from the death of Mr. Robinson, about 37% of the projected loss of Mrs. Robinson, and in the range of 14% of the projected figures for the loss of the children. In a motion for judgment notwithstanding the verdict or for a new trial appellant presented to the trial court the issues raised herein, as well as contending that the compensatory damage award was so grossly excessive as to evidence passion, prejudice and caprice on the part of the jury. That motion was denied. In an action in which an award of $50,000.00 for the death of a nine year-old boy was sustained (apparently based on a record comprised essentially of abstract projections), a Tennessee Court of Appeals stated:

. . . the amount of the verdict in a tort action is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence . . . *Southern Railway Co. v. Sloan*, 56 Tenn.App. 380, 407 S.W.2d 205, 211 (1966).

Based on all the foregoing, we do not find any prejudice in the testimony of appellant's economist.

This leaves for consideration the question of whether the issue of punitive damages was properly submitted to the jury.

■ Under Tennessee law punitive damages may only be awarded in cases involving fraud, malice, gross negligence or oppression, where a wrongful act is done with a bad motive or so recklessly as to imply a disregard for social obligations, or where there is such willful misconduct or entire want of care as to raise a presumption of conscious indifference to consequences. *Inland Container Corp. v. March*, 529 S.W.2d 43, 45 (Tenn., 1975). Such damages are allowed as punishment of the wrongdoer and are not based so much upon the nature and extent of the injury as they are upon the oppression of the party who does the injury. *Lazenby v. Universal Underwriters Insurance Co.*, 214 Tenn. 639, 642, 383 S.W.2d 1, 4 (1964).

The record in this case specifically reflects the considerations upon which the trial court's determination that punitive damages were recoverable was based.

In denying appellant's post-trial motion the court appears to have held that if appellant was guilty of any negligence such negligence must be deemed gross—"If the defendant breached negligently the duty indicated, such negligence was gross". Order of 5/29/75, p. 6. Such a view, automatically imposing upon appellant the penalty of punitive damages upon a finding of liability, would not be proper under the Tennessee law nor would it be consistent with the instructions under which the case went to the jury.

The trial court further relied upon three specific considerations in support of the decision to permit the award of punitive damages to stand.

There is evidence in the record that officers of the defendant were aware prior to the accident involved herein that claims had been made against their company for deaths allegedly resulting from the use of its product, "Grill-Time", for indoor heating purposes. One corporate officer of the defendant testified that he knew before this accident that the burning of charcoal briquets results in the giving-off of carbon monoxide, and that he, himself, would not use this product indoors. There was also testimony that carbon monoxide is a deadly gas. Further, there was testimony that the defendant's employees caused to be printed-up large quantities of labels warning against this possibility. Order of 5/29/75, p. 5.

Taking those considerations in reverse order, the labels were printed at some time in 1971 in compliance with regulations adopted by the Food and Drug Administration on August 4, 1971, to be effective August 1, 1972. There was no duty imposed upon Appellant to affix the more detailed warnings to its bags until August 1, 1972. It does not appear from the record that such labels were printed prior to May 30, 1971 when the bags of charcoal purchased by Mr. Robinson were manufactured.

The testimony of appellant's officer regarding how he would use the product is consistent with appellant's general theory of defense—that the hazard of burning charcoal in a closed environment is so obvious and well known that no reasonable person would do so, and that a specific detailed warning of such hazard was not necessary.

As regards other death claims arising from the indoor use of "Grill-Time" charcoal, the record reflects that appellant had had three such claims sued upon. One of such claims was asserted in litigation commenced on September 17, 1973. That claim could not be relevant to appellant's culpability in 1971–1972. The second claim was dismissed in a directed verdict in defendant's favor, which hardly imposes upon appellant any basis for an award of punitive damages. The record as to the third claim is that "somewhere around 1964" a suit was filed in New York state, the disposition of which was unknown.

We do not believe that the factors recited by the trial court afforded a sufficient foundation for submitting the issue of punitive damages to the jury. While appellees contend that other evidence in the record would be sufficient to support submission of the issue, we have considered the same and are constrained to conclude that, viewed in the light most favorable to appellees, the record does not meet the standards enunciated by the Supreme Court of Tennessee as necessary to permit an award of punitive damages.

The judgment below is reversed as to the awards of punitive damages and affirmed as to the awards of compensatory damages.