(Nos. 51315, 51335 cons.—

MARCIA J. RUCKER, Adm'x, Appellee and Appellant, v. NORFOLK & WESTERN RAILWAY COMPANY *et al.* (General American Transportation Company, Appellant and Appellee).

*Opinion filed October 19, 1979.—Rehearing denied November 30, 1979.*

Robert W. Wilson, of Burroughs, Simpson, Wilson, Hepler & Broom, of Edwardsville, for appellant.

John T. Pierce, Jr., of Pratt, Pierce, Bradford & Gitchoff, Ltd., of East Alton, for appellee.

Keith L. Davidson, of Chicago, and Thomas F. Londrigan, of Springfield (Robert B. Patterson, of counsel), for amicus curiae Illinois Trial Lawyers Association.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant Great American Transportation Company (GATX) manufactures liquified petroleum gas (LPG) tank cars, one of which exploded in the Decatur switchyard of defendant Norfolk & Western Railway Company (N & W) on July 19, 1974. Clyde G. Rucker was an employee of N & W and was killed as a result of the explosion. His widow, Marcia, as administratrix of his estate, brought this action for wrongful death and personal injuries in the circuit court of Madison County, charging N & W with violations of the Safety Appliance Act (45 U.S.C. sec. 1 *et seq.* (1970)) and the Federal Employers' Liability Act (45 U.S.C. sec. 51 *et seq.* (1970)) and alleging strict liability in tort against GATX and Phillips Petroleum Company (Phillips), lessor of the tank car. N & W admitted liability under the Safety Appliance Act, and the claim under the Federal Employers' Liability Act was withdrawn by plaintiff. A jury found defendant GATX also liable and returned a verdict against N & W and GATX for $850,000 in damages. N & W sought indemnification from GATX and Phillips, but that matter was severed by order of this court, and it remains pending in the circuit court.

After trial, N & W and plaintiff entered into a loan-receipt agreement whereby N & W advanced $700,000 to plaintiff. Plaintiff promised to repay that amount from any judgment recovered and to pursue "all legal and reasonable means" to enforce the judgment against GATX.

On GATX' appeal to the appellate court, the findings of liability were affirmed, and plaintiff's verdict was upheld; pursuant to motion by GATX, however, the loan-receipt agreement was held to be void, and it was ordered that the $700,000 "loan" be set off as a partial satisfaction of judgment (64 Ill. App. 3d 770). We allowed the respective petitions for leave to appeal of GATX and plaintiff on the liability and loan-receipt issues.

The first issue raised in GATX' appeal is whether the circuit court properly ruled that evidence of GATX'

compliance with Federal standards for the construction of LPG tank cars was inadmissible. Plaintiff alleged that the car was defectively designed due to the absence of a so-called "headshield," a protective device that would shield the car from damaging contact with other cars and objects. The car here in question was manufactured in 1971, and at the time Federal regulations did not require a headshield (49 C.F.R. pt. 179 (1971)). The car therefore met Federal requirements as they then existed even though no headshield was included. GATX was prohibited by the circuit court's ruling from placing this evidence before the jury, and it assigns this as error.

GATX urges us to adopt a balancing test whereby the risk and gravity of the danger of the design are weighed against the burden of precautions necessary to avoid the danger. Such an analytical process, it is argued, is of assistance in determining whether a product is unreasonably dangerous. In undertaking this balancing test, the argument continues, consideration should be given to factors influencing a manufacturer's design choice and, in this regard, a manufacturer's compliance with Federal standards should be considered as some evidence that the product is not unreasonably dangerous.

The appellate court rejected this argument, primarily in reliance upon *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443. *Cunningham* involved a transfusion of blood containing serum hepatitis, and the defendant sought the admission of evidence that the infectious substance could not be detected under existing medical knowledge. The court held that inability to detect the hepatitis was "of absolutely no moment" (47 Ill. 2d 443, 455), and the appellate court in this case quoted that portion of the *Cunningham* opinion in ruling that the evidence offered by GATX was also inadmissible (64 Ill. App. 3d 770, 781). In *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 161, we held that a plaintiff in a design defect case

could attempt to prove such a defect by introducing evidence of feasible alternative designs and that the holding in *Cunningham* did not preclude this result. (See also Note, *Products Liability—Strict Liability—Elimination of the "State of the Art" Defense,* 41 Tenn. L. Rev. 357, 362 (1974).) Similarly, we believe that defendant GATX should be allowed to show that a given alternative design is not required by Federal regulations and that such evidence is relevant in determining "whether the complained-of condition was an unreasonably dangerous defect" (76 Ill. 2d 154, 163). Prior opinions of the appellate court have reached a similar conclusion in their holdings (*Wenzell v. MTD Products, Inc.* (1975), 32 Ill. App. 3d 279, 293-94; *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill. App. 3d 339, 345) or in *dicta* (*Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 988 n.5; *Pyatt v. Engel Equipment, Inc.* (1974), 17 Ill. App. 3d 1070, 1073) and the great weight of authority from other jurisdictions likewise favors admission of the evidence (see, *e.g., Simien v. S. S. Kresge Co.* (5th Cir. 1978), 566 F.2d 551, 554; *Bruce v. Martin-Marietta Corp.* (10th Cir. 1976), 544 F.2d 442, 447, *affirming* (W.D. Okla. 1975), 418 F. Supp. 829, 835-36; *Johnson v. Husky Industries, Inc.* (6th Cir. 1976), 536 F.2d 645, 648; *Bellotte v. Zayre Corp.* (1st Cir. 1976), 531 F.2d 1100, 1103; *Fincher v. Ford Motor Co.* (S.D. Miss. 1975), 399 F. Supp. 106, 114, *aff'd* (5th Cir. 1976), 535 F.2d 657; *La Gorga v. Kroger Co.* (W.D. Pa. 1967), 275 F. Supp. 373, 378; *Berkebile v. Brantly Helicopter Corp.* (1971), 219 Pa. Super. 479, 485, 281 A.2d 707, 710; see also *Bailey v. Boatland of Houston, Inc.* (Tex. Civ. App. 1979), 585 S.W.2d 805, 812 (dissent) (if a plaintiff is allowed to offer evidence of the applicability of design features, a defendant manufacturer should be allowed to offer evidence of relative cost and availability of the feature)). (Under the proposed Uniform Product Liability Law, 44 Fed. Reg. 2996 (1979), drafted

by the Department of Commerce, the evidence would also be admissible under specified circumstances.)

We note that, by our holding, evidence of compliance with Federal standards is relevant to the issue of whether a product is defective (*Simien v. S. S. Kresge* (5th Cir. 1978), 566 F.2d 551, 554), as well as the issue of whether a defective condition is unreasonably dangerous, as GATX contends. If the product is in compliance with Federal standards, the finder of fact may well conclude that the product is not defective, thus ending the inquiry into strict liability. If a finding is entered that the product is defective, evidence of compliance becomes additionally relevant to the issue of whether the defective condition is unreasonably dangerous. The fact of compliance may indicate to the finder of fact that the defect is not unreasonably dangerous.

Plaintiff contends that the admission and use of the evidence in this fashion improperly direct the fact finder's attention to the manufacturer's conduct rather than the product and replace strict liability standards with those of traditional negligence. We do not agree, however, that the focus of the inquiry is not the product, as it must be (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 453). The evidence which we approve is that a product, not a manufacturer's conduct, conforms to Federal standards. Any misapprehension that negligence is the standard of liability stems only from the injection of a "reasonableness" element in determining whether a defective condition is unreasonably dangerous. As Prosser states, a strict liability design case resembles a negligence action because the reasonableness of the manufacturer's design choice is a key issue (Prosser, Torts sec. 96, at 644-45 (4th ed. 1971)). Despite the resemblance, however, the elements of the plaintiff's proof remain those of an action in strict liability. On this point, we agree with defendant GATX.

We do not agree with GATX, however, as to the effect to be given to evidence of compliance with Federal standards. It argues that the promulgation of Federal regulations on the subject of railroad cars indicates the intention of Federal authorities that no liability should attach to manufacturers whose products are in compliance with those regulations. Contrary to GATX' contention, we do not believe that the presence of Federal regulations on the subject precludes the imposition of tort liability according to State tort law standards more stringent than those contained in the Federal regulations. We find no indication in the Federal regulations that the preemption of State tort law was intended. (*Raymond v. Riegel Textile Corp.* (1st Cir. 1973), 484 F.2d 1025, 1027; *Hubbard-Hall Chemical Co. v. Silverman* (1st Cir. 1965), 340 F.2d 402, 405.) In fact, it would be reasonable to conclude that the purpose of the regulations is to insure greater safety and that the imposition of tort liability on the basis of more stringent State law is consistent with this purpose (*Raymond v. Riegel Textile Corp.* (1st Cir. 1973), 484 F.2d 1025, 1027). The issue of whether the LPG tank car is in an unreasonably dangerous defective condition therefore remains a question of fact. (*Simien v. S. S. Kresge Co.* (5th Cir. 1978), 566 F.2d 551, 556-58; *Raymond v. Riegel Textile Corp.* (1st Cir. 1973), 484 F.2d 1025, 1027; *La Gorga v. Kroger Co.* (W.D. Pa. 1967), 275 F. Supp. 373, 382-83; *Berkebile v. Brantly Helicopter Corp.* (1971), 219 Pa. Super. 479, 485, 281 A.2d 707, 710.) The finder of fact may conclude that a product is in an unreasonably dangerous defective condition notwithstanding its conformity to Federal standards.

The second issue raised by GATX on appeal is whether the circuit court erred in admitting plaintiff's evidence of prior accidents. The circuit court admitted evidence of 42 prior accidents involving punctures of LPG tank cars for the purpose of showing the danger of the

design, but no more than 26 of the accidents involved exactly the same situation as that present here, puncture of the tank by a coupler. GATX contends that plaintiffs failed to show that the remaining 16 accidents were substantially similar to the present accident. With this we disagree. The point sought to be made by plaintiff in introducing the evidence is that the car is susceptible to puncture without a headshield. Whether the puncture was by coupler or other means is irrelevant. The circuit court, in its discretion, therefore could have determined that all 42 accidents were sufficiently similar and relevant to the issue of whether the car was dangerous. It need not be shown that the accidents occurred in an identical manner. Substantial similarity is all that is required. *Moore v. Bloomington, Decatur & Champaign R.R. Co.* (1920), 295 Ill. 63, 67.

The issue raised in plaintiff's appeal is whether the appellate court erred in ruling that the loan-receipt agreement, executed by plaintiff and N & W after trial, is void. In *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 169-70, we reviewed this area of the law extensively and pointed out that loan agreements between a plaintiff and one defendant are invalid if executed before the circuit court's judgment and it is kept secret; we also held conclusively "that the use of loan agreements is proper only where judgment has not been reached." Plaintiff's argument is therefore foreclosed by our decision in *Kerns.* The $700,000 advanced to plaintiff would properly be treated as a partial satisfaction of any future judgment.

The judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court of Madison County for a new trial not inconsistent with the views expressed herein.

*Reversed and remanded.*

MR. CHIEF JUSTICE GOLDENHERSH, with whom

442

MR. JUSTICE WARD and MR. JUSTICE MORAN join, dissenting:

Mr. Justice Ward, Mr. Justice Moran and I dissent and would affirm the judgment of the appellate court. In holding that "defendant GATX should be allowed to show that a given alternative design is not required by Federal regulations and that such evidence is relevant in determining 'whether the complained-of condition was an unreasonably dangerous defect' " (77 Ill. 2d at 438), the majority has completely ignored the basic tenet of product liability law, and has applied the law of negligence. The question is whether the product was defective, not whether the defect resulted from defendant's fault.

In *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, we held that a manufacturer is held to the degree of knowledge and skill of experts and is under a nondelegable duty to make a product which is reasonably safe. Proof that a product is not reasonably safe may be shown by evidence of the availability and feasibility of alternate designs at the time of its manufacture. Plaintiff's expert witness testified that in September 1971, when the car in question was built, it was feasible from an economic, practical and technological viewpoint to install head-shields. Defendant's experts testified to the contrary. The standards which defendant sought to introduce were the bare minimum below which the manufacturer might not fall, obviously failed to take into recognition the availability of improved methods of manufacture, and certainly did not serve to bar the installation of improved safety devices. They would, in any event, be wholly irrelevant to the question of technological feasibility.

The authorities upon which the majority relies do not support its position. In *Wenzell v. MTD Products, Inc.* (1975), 32 Ill. App. 3d 279, the circuit court struck an allegation in the complaint of a violation of a safety

specification. The appellate court held only that a violation of the standards would not of itself vest a cause of action in the plaintiff. In *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill. App. 3d 339, there is no indication that there was any objection to a conclusion contained in a report that a product was nontoxic orally. The appellate court's holding did not involve the question of admissibility of evidence; it held that "Although compliance with a relevant statutory scheme declaring whether defendant must warn of the dangers of its product is some evidence that the Jetco cleaner is not harmful or toxic, such compliance is not conclusive or controlling in defining defendant's common law liability for failure to warn." 16 Ill. App. 3d 339, 345.

The majority is in error for yet another reason. Defendant GATX was not only the manufacturer of the car in question; it was also the lessor to Phillips Petroleum Company, the lessee. The record shows that, as noted by the appellate court, "at the time of the Decatur accident, the necessary technology for the design of headshields and the AAR approval procedure for their installation on tank cars" was in existence. (64 Ill. App. 3d 770, 781.) Under these circumstances the appellate court correctly held that "a 'state of the art' defense based on GATX's compliance with federally mandated tank car design specifications would have been irrelevant." 64 Ill. App. 3d 770, 781.