# MICHAEL LIONEL, Plaintiff

## v.

# CINCINNATI, INCORPORATED, Defendant

Civ. No. 1993-227

District Court of the Virgin Islands

Div. of St. Croix

March 8, 1996

VINCENT A. COLIANNI, ESQ., HUNTER, COLIANNI, COLE & TURNER, Christiansted, St. Croix, Virgin Islands, *for Plaintiff*

R. ERIC MOORE, ESQ., OFFICES OF R. ERIC MOORE, Christiansted, St. Croix, Virgin Islands, *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

This matter is before the Court on plaintiff's motion for a new trial pursuant to Federal Rules of Civil Procedure 59(a). For the reasons set forth below, this motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 21, 1992, plaintiff severely injured his right hand while using a press brake manufactured by the defendant. The press brake was originally built for the U.S. Navy in 1943 and had been modified in the intervening 49 years. Plaintiff filed this products liability suit, alleging that the press brake was defectively designed and unreasonably dangerous because it lacked a point-of-operation safety device. At trial, the defendant argued that the press brake was not a completed product when manufactured but was part of a metal forming system, which would incorporate other components from other manufacturers. The defendant was allowed to introduce evidence of trade custom that placed responsibility for installing a point-of-operation safety device on the end user, not the manufacturer. The jury was also instructed that it may consider trade custom in deciding whether the press brake was a completed product and in assigning responsibility for installation of adequate safety devices. After a two-day trial, the jury returned a defense verdict of no liability.

The central question posed by plaintiff's motion for a new trial is whether the Court erred in admitting evidence of trade custom and instructing the jury on the same.[1] Plaintiff contends that

---

[1] Plaintiff also contends that a copy of the ANSI standards was inadvertently given to the jury, despite the Court's ruling that they be excluded during jury deliberation. In support, plaintiff's counsel states that he found a copy of the ANSI standards in the jury deliberation room two and one-half weeks after the verdict. But the mere fact that the

243

evidence of trade custom is irrelevant in the strict liability context of this case, citing *Heckman v. Federal Press Co.*, 587 F.2d 612 (3d Cir. 1978); *Holloway v. J.B. Systems, Ltd.*, 609 F.2d 1069 (3d Cir. 1979); and *Habecker v. Clark Equipment Co.*, 36 F.3d 278, 285 (3d Cir. 1994), *cert. denied*, 131 L. Ed. 2d 195, — U.S. —, 115 S. Ct. 1313 (1995), in support.

## DISCUSSION

Section 402A provides that "one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . ." RESTATE-MENT (SECOND) OF TORTS § 402A(1) (1965). It is settled in this jurisdiction that section 402A imposes liability not only for defects in manufacture but also for defective designs.[2] Because section 402A does not define the term "defect," various jurisdictions differ on their approaches to the question of design defect.[3] Not surprisingly, the jurisdictions are also split on the admissibility of evidence of industry practice and customs to disprove claims of design defect.[4]

▇▇▇ In this jurisdiction, *Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir. 1978) (Higginbotham, J.), is controlling. In that case the Court of Appeals for the Third Circuit, interpreting Virgin Islands law, concluded that where the finished product is the result of substan-

---

ANSI standards were seen in the jury deliberation room after the verdict does not prove that they were actually in the room during the jury's deliberation. In fact, the sworn affidavits of Margaret Richards and Salvador Fragosa, the courtroom deputy and bailiff respectively, stated that the ANSI standards were not sent to the jury room.

[2] *See, e.g., Verge v. Ford*, 581 F.2d 384 (3d Cir. 1978); *Gumbs v. International Harvester, Inc.*, 718 F.2d 88 (3d Cir. 1983); *Walters v. Mintec v. Mintec/International*, 758 F.2d 73 (3d Cir. 1985).

[3] *Compare Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 573 P.2d 443, 143 Cal. Rptr. 225 (Cal. 1978) (using "consumer expectations" approach) with *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020, 1027 (Pa. 1978) ("The jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use.")

[4] *Compare Rucker v. Norfolk & Western Ry.*, 77 Ill. 2d 434, 396 N.E.2d 534, 33 Ill. Dec. 145 (Ill. 1979) and *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964 (Mass. 1978) and *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (N.H. 1978) (all holding that industry standards are admissible) with *Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (Pa. 1987) and *Lenhardt v. Ford Motor Co.*, 102 Wash. 2d 208, 683 P.2d 1097 (Wash. 1984) and *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530 (N.D. 1977) (excluding evidence of industry standards).

tial work by more than one party, evidence of trade custom is admissible in determining responsibility for the absence of a safety device. *Id.* at 386-87. Although the Court of Appeals was silent on the issue, this Court holds that whether the allegedly defective design product was finished once it left the defendant's control is a question of fact for the jury to decide. Once the defendant establishes a proper foundation, the Court must allow and instruct the jury to determine whether in fact the product was complete when it left the defendant's factory and, ultimately, whether the defendant bore the responsibility of installing safety devices.

■ ■ Here, the defendant produced evidence that the press brake was but one component of a metal forming system and required the addition of other components before it could be used to bend metal. The defendant also showed that other manufacturers built the dies, work supports and gauge blocks used by the plaintiff. Accordingly, it was for the jury to decide whether the press brake was indeed a completed product when it left the defendant's control and was delivered to the Navy in 1943. And, as Verge held, evidence of trade custom is admissible as an aid in allocating the responsibility for installing adequate safety devices. Thus, the Court's instruction to the jury on the responsibility for installing safety devices read as follows:

> If you find that the press was not a completed product, you must then determine whether the Defendant or the owner of the press, i.e., the Plaintiff's employer, was responsible for providing proper safety devices to make the press safe for its intended use.
>
> Now, in determining who bore the responsibility of installing adequate safety devices, you may consider such factors as trade custom, at what stage the device is generally installed, safety codes, regulations, the relative expertise of the Defendant versus the owner of the press, i.e., which party is best acquainted with the design problems and safety techniques in question; and, finally, the practicalities of the situation, at what stage is installation of a device most feasible.
>
> If you determine that the press as sold by the Defendant was not a completed product, and that the owner of the press,

245

that is, the plaintiff's employer, rather than the Defendant bore the responsibility of the installation of adequate safety devices, then you must find that the product as sold by the Defendant was not a defective product.

On the other hand, if you determine as the Plaintiff contends that the press as sold by the Defendant was a completed product you need only determine whether the product was defective, as that term has already been defined, when it left the Defendant's control.

■ The cases cited by plaintiff[5] are inapposite for several reasons. First, in each of plaintiff's cases the Court of Appeals for the Third Circuit was called upon to interpret Pennsylvania's products liability law. While they may be persuasive, the Court of Appeals' rulings interpreting Pennsylvania law are not binding on this Court's interpretation of Virgin Islands law.

■ Second, even the cases cited by plaintiff do not require a blanket exclusion of evidence of industry custom. Rather, the admissibility of the evidence depends on the premise for which it is to be used. In fact, *Heckman*, stands for a proposition contrary to the one advanced by plaintiff. In *Heckman*, the defendant argued that state labor regulations, which required employers to install point-of-operation devices, exculpated it as a matter of law. Although the Court of Appeals held that the state regulations did not relieve the defendant of liability, it also noted that the regulations "would be admissible in the retrial as having some relevance to whether the manufacturer could expect the buyer to install safety equipment," *Heckman*, 587 F.2d at 616-617 n.2.

Moreover, in *Holloway* the Court of Appeals premised the admissibility of trade custom on the uses to which it was to be put. In that case, the defendant introduced evidence of trade custom to demonstrate that safety devices were not needed at all. In finding this use impermissible, the court contrasted it with the use of trade custom in *Verge*.

---

[5] *Heckman v. Federal Press Co.*, 587 F.2d 612 (3d Cir. 1978); *Holloway v. J.B. Systems, Ltd.*, 609 F.2d 1069 (3d Cir. 1979); and *Habecker v. Clark Equipment Co.*, 36 F.3d 278, 285 (3d Cir. 1994).

In *Verge*, the Court used the concept of trade custom only to determine the stage in the production of equipment manufactured by several companies at which a warning device generally was installed. Once the customary stage was identified, the producer responsible for that stage would be held strictly liable. In contrast, the trade custom testimony introduced at trial here was intended to demonstrate that it was the custom of the industry not to attach [a safety device] at all.

*Holloway*, 609 F.2d at 1073. As in *Verge*, the defendant in this case introduced trade custom only to determine the stage at which the safety devices were to be installed; it was not used to escape liability by showing that safety devices were not used by the industry or not needed on the product.

■ Third, even if trade custom were improperly admitted in this case, that error was adequately cured by the Court's instructions which emphasized that negligence and reasonableness had no place in a products liability suit.[6] For example, the Court's "Defective Condition" instruction read as follows:

A product is in a defective condition unreasonably dangerous to the user, when it has a propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer, with the ordinary knowledge common to the foreseeable class of users as to its characteristics. Thus, Cincinnati is not subject to liability for Mr. Lionel's injury unless you find that the press brake in 1943 when delivered in wartime to the U.S. Navy was in a condition not contemplated by such an ordinary user which made it unreasonably dangerous to such an ordinary and foreseeable user of press brakes. A product is not defective or unreasonably dangerous merely because it is possible to be injured while using it.

You have heard evidence of the trade and custom in the metal bending industry regarding what manufacturers such as Cincinnati Incorporated and the ordinary users/customers/employers

---

[6] *See, e.g., Holloway*, 609 F.2d at 1073 (finding that the introduction of trade custom, though improper, was not reversible error because of the court's curative instructions).

expected in a general purpose press brake. The fact that the defendant may have followed the custom and method of design and manufacture of this press brake does not, however, give you a controlling or conclusive test of whether this machine was defective when shipped in 1943 to the U.S. Navy. If you find the machine left Cincinnati Incorporated's hands in a defective condition, the fact that it was designed or manufactured in accordance with methods used by other manufacturers at the time does not alter the quality of Cincinnati Incorporated's acts. You may, however, consider this practice in determining whether the press brake was a completed product, that is, whether the makers and users of the press brake in 1943 expected it to have other things added to it after it left Cincinnati Incorporated. Cincinnati Incorporated contends that the press brake was not a completed product because it was a part of a metal bending system. Mr. Lionel contends, on the other hand, that it was a complete product in and of itself.

(emphasis added).

In addition, the Court's "Fault Not At Issue" instruction stated:

If you find that the essential elements of plaintiff's claim have been established by the preponderance of the evidence, you must find the defendant liable even though you may find and believe that the defendant exercised all reasonable caution in the preparation and sale of the press brake.

Court's Jury Instructions (emphasis added). Thus, even if evidence of trade custom were inadmissible, in the context of the entire case, plaintiffs were not prejudiced by admission of this evidence.

Accordingly, plaintiff's motion for a new trial will be denied. A separate order follows.

DATED this 7th day of March, 1996.