## Land v. The Salvation Army

C.P. of Philadelphia County, February Term 1997, no. 1665.

*Daniel L. Thistle,* for plaintiffs.
*Paul R. Brady III,* for defendants.

GOODHEART, *J.,* August 14, 2000—

## THE PARTIES AND THE CLAIMS

The plaintiffs in these consolidated cases are the administrators of the estates of four children who died in a fire at a shelter in Philadelphia, the deceased children's mother, both in her own right and as parent and natural guardian of two other children who were injured but not killed by the blaze.

The defendants are The Salvation Army, which owned and operated the shelter; Cope Lippincott Slifer Architects, the architectural firm that designed recent renovations to the building; Weyman Associates Inc. the electrical contractor for the renovation project; and C. Daniel Weyman, its principal.

Before trial, the claims of the survivng children were settled out of court, the mother's own claims were with-

drawn and all defendants except The Salvation Army were dismissed from the case. I tried this case—with a jury of seven—on the claims of the four decedents' estates against The Salvation Army only.

Because trial of this matter had been bifurcated—by another judge's ruling, before the case was assigned to me—the jury was asked to answer the following two special interrogatories:

"(1) Was The Salvation Army negligent?

"(2) If the answer to number 1 is 'yes,' was that negligence a 'substantial factor' causing the deaths of the four children?"

The jury decided that The Salvation Army had been negligent, but that the negligence was not a substantial cause of the deaths, thereby resulting in a defense verdict.

Post-trial motions were filed by both sides—the plaintiffs' motion sought judgment n.o.v. on the issue of causation, or in the alternative, a new trial; the defendants' motion sought judgment n.o.v. on the jury's finding of negligence—and after much thought, I granted the plaintiffs' motion and ordered a new trial. Both sides then appealed.

## BACKGROUND

On March 11, 1995, a fire broke out in room 203 of the Red Shield Residence, a 41-unit shelter owned and operated by The Salvation Army, located at 715 North Broad Street, Philadelphia.

That evening, the residence was full, with 45 adults and 95 children housed there; room 203 was occupied

by the four plaintiffs' decedents, the three surviving children, and their mother, Jeanette Walters. Ms. Walters was away from the room using a public telephone at the end of the hall when the fire started, but by the time help arrived, four of her young children had succumbed. Though the building itself had a fire alarm system that included smoke detectors in the halls, the individual residential units were not equipped with smoke detectors, and, in fact, the building's alarm system did not trip until the door to the room was opened, releasing smoke into the hallway.

The Philadelphia Fire Prevention Code became effective on January 1, 1995, replacing the 1984 Philadelphia Fire Code. The requirement that smoke detectors be installed in each individual unit of the residence was added by the Fire Prevention Code; the 1984 Philadelphia Fire Code had no such requirement.

Because the Fire Prevention Code allowed existing buildings a two-year "grace" period to come into compliance with its heightened requirements, the residence was in compliance with the FPC on March 11, 1995, even though it lacked smoke detectors in the individual residential units, and even though The Salvation Army—tragically—failed to spend the minimal amount of money[1] it would have cost to install smoke detectors in each unit until after the fire occured.

---

1. According to Bruce Livingston, who testified for the plaintiffs, the installation of smoke detectors in the individual units would have cost about $6,000; that plus the additional work required to bring the building into full compliance with the FPC would have cost something less than $16,000 (N.T. 5/17/99, pp. 2.172-2.173).

## THE DEFENSE MOTION FOR JUDGMENT N.O.V.

Violation of a municipal code can constitute negligence per se. *Berkebile v. Brantly Helicopter Corp.,* 219 Pa. Super. 479, 281 A.2d 707 (1971). Code compliance, however, does not necessarily equate to a lack of negligence; resonable care under the circumstances is still required. The Salvation Army is not, therefore, entitled to judgment as a matter of law based upon its compliance with the Fire Code, as code compliance does not rule out a finding of common-law negligence.

Though the plaintiffs' evidence on the defendants' common-law duty of care was fairly sparse—the only witness who testified on the point, Brooks Semple, had only limited scientific training—I believe that his level of knowledge was sufficient to clear the admittedly low bar set for expert testimony in Pennsylvania. Further, I believe that the jury was entitled to determine whether or not The Salvation Army's failure to immediately install smoke detectors upon the city's adoption of the Fire Prevention Code constituted negligence even in the total absence of expert testimony.

Thus, defendant is not entitled to judgment n.o.v., though because I granted the plaintiffs' motion for new trial on all issues—as discussed below—the defendant will get another chance to present its position, to a different judge and jury.

## THE PLAINTIFFS' MOTION FOR NEW TRIAL

After reviewing the parties' post-trial submissions, I realized that my decision to limit the plaintiffs' witnesses had perhaps seriously impeded the plaintiffs' ability to prove their case.

Specifically, the plaintiffs were prepared to call a second expert witness, Albert Tantala, a licensed Pennsyl-

vania mechanical engineer, to testify that had there been a smoke alarm in room 203, the plaintiffs' decedents would not have died in the fire.

I precluded Mr. Tantala from testifying, on the basis that his testimony would have been merely cumulative of that given earlier by Mr. Semple, even though I had—by sustaining an objection—prevented Mr. Semple from giving that very opinion during his testimony. (N.T. 5/19/1999, pp. 2.85-2.86.) I also prevented the plaintiffs from asking similiar questions of a Philadelphia assistant fire marshal who investigated after the fire, and of a fire department paramedic who responded to the initial alarms,which left the plaintiffs with *no* witness to give this obviously relevant opinion.

Certainly, an opinion that a smoke alarm in room 203, *would have* prevented the deaths would have been very useful to the jury in evaluating the issue of causation, and its absence from this case—as a result of my rulings—is, all by itself, a more than sufficient basis for a new trial to be granted.

## CONCLUSION

It is impossible for me to say with any degree of certainty that my rulings had no effect on the outcome of this case. That being so, I believe that my decision to award a new trial on all issues[2] is required in the interests of justice, and that it is the only proper outcome; the parties may retry their case before a different judge and jury for whatever result obtains.

---

2. Generally, if a new trial is granted, it is as to all parties and all issues; one may not pick and choose which portions of an inherently flawed proceeding are to be preserved and which are to be discarded. *Pennsylvania Company for Insurance on Lives and Granting Annuities v. Lynch,* 308 Pa. 23, 162 A. 157 (1932).