Wilford **SIMIEN**, Plaintiff-Appellee,

v.

**S. S. KRESGE COMPANY**, Defendant-Third-Party Plaintiff-Appellant.

**MODERN JACKETS**, Defendant,

v.

**SMITH BROTHERS MANUFACTURING COMPANY**, Third-Party Defendant-Appellee.

No. 76–1020.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1978.

---

Daniel V. Flatten, Beaumont, Tex., for defendant-third-party plaintiff-appellant.

Walter Umphrey, Port Arthur, Tex., for W. Simien.

Thomas J. Swearingen, Port Arthur, Tex., Ken Parker, Beaumont, Tex., for Smith Bros., etc.

Before THORNBERRY, GOLDBERG, and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

This products liability diversity action was brought by Wilford Simien against ap-

pellant S. S. Kresge Company to recover damages for injuries suffered by Simien when a jacket he was wearing caught fire. In January 1973 Simien was wearing the jacket, which he asserts was purchased from Kresge, while starting an outdoor fire. To speed the start-up, Simien threw a small, open-mouthed container of gasoline onto the small flame he had generated. A loud "whoomp" sound occurred, after which Simien found the jacket aflame. He received severe burns to his neck and face. Simien sued Kresge as seller of the jacket under theories of strict liability and negligence.[1] After a jury trial, Simien was awarded a $66,000 verdict and judgment against Kresge on the strict liability claim.[2] From this judgment Kresge appeals.

Because of errors by the trial court in instructing the jury and in refusing to submit a requested interrogatory, it is clear that the verdict cannot stand. Furthermore, the lack of substantial evidence to show any defect in the design of the jacket that would make it unreasonably dangerous requires that judgment be rendered for Kresge.

### Instructions to Jury

Since this was a products liability action, a critical issue was whether the jacket was sold in a defective condition which rendered it unreasonably dangerous to the consumer. *See* Restatement (Second) of Torts § 402A (1965), adopted as the law of Texas in *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967). Kresge contended it was not, and bolstered this contention by pointing to the testimony of experts for both sides that the fabric of which the jacket was composed met and far exceeded the requirements of the federal Flammable Fabrics Act and Commercial Standard 191–53.[3] Compliance with these federal statutory safety requirements and industry standards is evidence that a product is not defective. *United States v. Estremera,* 531 F.2d 1103 (2nd Cir. 1976) (that a fabric is "normally flammable" under the Flammable Fabrics Act is evidence that the fabric is not unreasonably dangerous); *cf. Muncie Aviation Corp. v. Party Doll Fleet, Inc.,* 519 F.2d 1178 (5th Cir. 1975) (Federal Aviation Administration advisory circulars are admissible as bearing on the standard of care in determining negligence). Nevertheless, the trial court instructed the jury that if they found that the design of the jacket met the requirements of the statute and commercial standard, that compliance would be evidence that the jacket *was* defective.[4] Kresge duly objected to this specific portion of the charge. For some unex-

1. Kresge impleaded Smith Brothers Manufacturing Company as manufacturer, but the jury found that Smith Brothers did not manufacture the jacket in question.

2. Although the jury also found Kresge to be negligent, Simien could not recover on that theory because of the jury's finding that he was contributorily negligent.

3. 15 U.S.C.A. § 1191 *et seq.* authorizes the Secretary of Commerce to issue standards of flammability. U.S. Department of Commerce, Commercial Standard 191–53 (1953), was the standard for flammability of clothing textiles to be applied under the Act at the time in question. Simply stated, the test to be applied is as follows: Under specified conditions, a two- by six-inch specimen of the fabric is stretched over a rack in a special draft-proof chamber at a forty-five degree angle of inclination. A standard flame is exposed to the base of the fabric. Both the number of seconds it takes the fabric to ignite and the number of seconds it takes the

six-inch specimen to burn are measured. To meet the highest grade under this standard—normal flammability—the time to ignite the specimen must be at least one second and the time to burn the six-inch strip must be at least 3.5 seconds.

Plaintiff's expert testified that in his test it took the jacket fabric 4.5 seconds to ignite and 20.7 seconds to burn. Defendant's expert testified that it took the fabric 2.71 seconds to ignite and 39.8 seconds to burn. Under both tests, the requirements of the commercial standard for normal flammability were far exceeded.

4. The charge on this issue was as follows:

Also, the Court would instruct you that in determining whether the design or material of the jacket was defective in any way, you are permitted to take into consideration accepted standards in the jacket industry, thus, you may consider the evidence that the design and manufacture of the jacket was in

plained reason, the judge overruled Kresge's objection and refused to recall the jury to correct the obviously erroneous instruction.

Simien acknowledges that this portion of the charge was erroneous, but asserts that the error was harmless in light of the charge as a whole. *See Delancey v. Motichek Towing Service,* 427 F.2d 897, 901 (5th Cir. 1970). We disagree. The best that can be said about this element when the charge as a whole is considered is that it is internally inconsistent. This inconsistency may well have deprived Kresge of the benefit of its most persuasive evidence on this critical issue. For this error alone, the judgment would have to be reversed.

### Submission on Interrogatories

■ Fed.R.Civ.P. 49(a) allows a trial court to require a special verdict from the jury "in a form of a special written finding upon each issue of fact." Once the decision is made to submit the case on special interrogatories, the judge must submit all material issues raised by the pleadings and the

evidence. *See, e. g., Duke v. Sun Oil Company,* 320 F.2d 853, 865 (5th Cir. 1963); *Angelina Casualty Company v. Bluitt,* 235 F.2d 764, 770 (5th Cir. 1956); C. Wright & A. Miller, 9 Federal Practice and Procedure § 2506 (1971).

■ Sale of the product in question by the defendant is an essential element of a products liability case. *See* Restatement (Second) of Torts § 402A (1965). In its pleadings and proof, Kresge put in issue whether it sold the jacket Simien was wearing at the time of the fire. The trial judge at one point in his general instructions told the jury that manufacture or sale was an element in a products liability suit, but numerous other instructions presumed without qualification that Kresge sold the jacket. After these general instructions, the trial judge chose to obtain a special verdict from the jury by requiring them to answer six interrogatories.[5] The judge refused to submit an interrogatory inquiring whether the jacket was purchased from Kresge, even though Kresge tendered such an interrogatory and objected to its omission. We

compliance with the Federal Flammable Fabric Act or Commercial Standard 191–53, or standards which appear to have been the uniform commercial accepted design and manufacture standards or guidelines for manufacturers of jackets of this type. If the jacket in this case failed to meet these code standards, this would be evidence that the jacket's design was defective. On the other hand, if you find that the design of the jacket does meet the Federal Flammable Fabric Act, and Commercial Standard 191–53, this would be evidence that the design of the jacket was defective.

5. The verdict of the jury consisted of answers to the following interrogatories:

1. Do you find from a preponderance of the evidence that the jacket was in a defect [sic] condition, unreasonably dangerous to the user in one or more of the respects contended by Plaintiff, Wilford Simien, at the time of the occurrence in question and that such condition was a producing cause of the injuries to Wilford Simien?
Answer: Yes.
2. Do you find from a preponderance of the evidence that Wilford Simien misused, as that term has been defined to you in the Court's charge, the jacket in question, and that such misuse was a producing cause of the injuries sustained by Plaintiff?

Answer: No.
3. Do you find from a preponderance of the evidence that Defendant, S. S. Kresge Company, committed some act of negligence, as contended by Plaintiff, and that such act or acts of negligence was a proximate cause of the injuries to Wilford Simien?
Answer: Yes.
4. Do you find from a preponderance of the evidence that Plaintiff, Wilford Simien, committed some act of negligence, as contended by Defendant, and that such act or acts of negligence was a proximate cause of the injuries to Wilford Simien?
Answer: Yes.
5. Do you find from a preponderance of the evidence that the jacket which plaintiff, Wilford Simien, was wearing on or about January 27, 1973, when he was burned, was manufactured by third-party defendant, Smith Brothers Manufacturing Company?
Answer: No.
6. What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Wilford Simien for his pecuniary loss, if any, resulting from his injuries of January 27, 1973?
Answer: $66,000.

agree with Kresge that this omission constitutes reversible error since "each [material] issue of fact" was not submitted to the jury as required by Rule 49(a).

■ Simien contends that the case was submitted under Rule 49(b) rather than under Rule 49(a). Rule 49(b) allows the court to submit to the jury, "together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." Although the court did give general instructions, the only form of verdict requested and returned was the response to the six interrogatories. Nowhere was there given to the jury "appropriate forms for a general verdict." Thus the submission must be judged under the standard of Rule 49(a).

■ Simien also asserts that his wife's testimony that she bought the jacket from a Kresge store was uncontroverted, and that therefore no issue of fact existed. This argument overlooks the testimony of a buyer for Kresge that Kresge's only supplier of this kind of jacket during the time in question was Smith Brothers Manufacturing Company, and the testimony of an officer of Smith Brothers that this jacket was not a Smith product. The jury could have found from this testimony that Kresge was not the seller of the jacket in question.

Finally, Simien argues that even though no interrogatory on sale and purchase of the jacket was submitted, the jury was properly informed that to impose liability they had to find that the jacket had been purchased from Kresge. We need not decide whether the general charge adequately instructed the jury on this element; assuming that it did, the fact remains that nothing in the interrogatories would have allowed the jury to find for Kresge on the basis that it did not sell the jacket. *Cf. United States v. Trinity Universal Insurance Company*, 457 F.2d 950, 956–57 (5th Cir. 1972). Consequently, the failure of the trial judge to submit Kresge's requested interrogatory constitutes reversible error.

### Evidence of a Defective Condition

■ Kresge argues that there was no substantial evidence that the jacket in question was defective and that consequently the trial judge should have directed a verdict for Kresge rather than submitting the case to the jury or should have granted Kresge's motion for judgment notwithstanding the verdict. To determine whether the evidence in this case was sufficient to submit the case to the jury, we must be guided by the standards enunciated in *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969). In making that determination we must consider all of the evidence, but in a light which draws all reasonable inferences most favorably to Simien's case. If the record contains evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, then the case was properly submitted to the jury. On the other hand, if the facts and inferences point so strongly and overwhelmingly in favor of Kresge that reasonable jurors could not arrive at a contrary verdict, then Kresge is entitled to judgment. *See Boeing Company v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969). After carefully considering the record of this case in the light most favorable to Simien, we hold that there was no substantial evidence of a defect in the jacket in question and that consequently judgment should have been entered for Kresge.

■ Simien alleges that a defective design of the jacket in question rendered it unreasonably dangerous and resulted in injuries to him. In order to impose strict liability on a seller of a product under Restatement (Second) of Torts § 402A (1965), it is incumbent upon the plaintiff to establish evidence on the critical issue of a "defect" in the product. *Gravis v. Parke-Davis & Co.*, 502 S.W.2d 863 (Tex.Civ.App.1973). A product can be defective as a result of a miscarriage in the manufacturing process or as a result of an improper design. *See Henderson v. Ford Motor Co.*, 519 S.W.2d 87 (Tex.1974). In either case, however, the defective condition must make the product

"unreasonably dangerous to the user or consumer" to result in liability. Restatement (Second) of Torts § 402A (1965). A product is not in a defective condition when it is safe for normal handling and consumption. Restatement (Second) of Torts § 402A, comment h (1965). The defective condition must be such as to make the product unreasonably dangerous: dangerous to the extent that any product so designed would not be placed in the channels of commerce by a prudent manufacturer aware of the risks involved in its use, or dangerous to the extent that the product so manufactured would not meet the reasonable expectations of the ordinary consumer as to safety. *General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 347 n.1 (Tex.1977); *Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 92 (Tex. 1974). *See* Restatement (Second) of Torts § 402A comment i (1965). "Demanding that the defect render the product *unreasonably* dangerous reflects a realization that many products . . . have both utility and danger." *Helene Curtis Industries, Inc. v. Pruitt*, 385 F.2d 841 (5th Cir. 1967) (emphasis added). For example, a reasonable user of clear glass doors must be held to appreciate the inherent risk of collision. *Metal Window Products Co. v. Magnusen*, 485 S.W.2d 355 (Tex.Civ.App.1970). Finally, it must be remembered that the seller is not an insurer; proof of injury alone is not sufficient to create liability. *Gravis v. Parke-Davis & Co.*, 502 S.W.2d 863, 868–69 (Tex.Civ.App.1973).

■ With these principles in mind, we consider whether the proof made a case for the jury on the issue whether some defective design rendered the jacket unreasonably dangerous to Simien. At the outset we note that the defect alleged is that the jacket was dangerously inflammable. Looking at all of the evidence, as we must, we first note that the jacket fabric met and far exceeded the requirements for normal flammability under the federal Flammable Fabrics Act and Commercial Standard 191–53. *See* footnote 3 *supra*. Experts testifying on behalf of both Simien and Kresge stated that the fabric was difficult to ignite. To meet the federal requirements for normal flammability a fabric must take at least one second to ignite when exposed to a standard flame. Simien's expert testified that he had to force ignition by exposing the fabric to a butane flame for approximately 4.5 seconds; Kresge's expert also had to force ignition by exposing the fabric to a butane flame for 2.71 seconds. According to the testimony, butane typically burns at about 1,650° F. Additionally, defendant's expert testified that he placed the fabric approximately one-quarter to one-half inch from a 1500–1800° F. heating coil for a period of ten minutes without the fabric igniting. The evidence is uncontroverted that the jacket fabric is extremely difficult to ignite.

The second component of the federal standard is the rate at which the fabric burns. To meet the requirements for normal flammability a standard sample under specified conditions must take at least 3.5 seconds to burn. Again the jacket fabric passed with flying colors: the sample used in the test conducted by Simien's expert took 20.7 seconds to burn; the sample used in the test conducted by Kresge's expert took 39.8 seconds to burn. Simien's expert testified that he would expect a cotton shirt to burn faster than the jacket fabric, and Kresge's expert stated that he would expect a shirt to burn three times faster than the jacket. Again, the evidence is uncontroverted and the conclusion is inescapable that this jacket fabric is relatively slow-burning.

■ This testimony that the fabric far exceeded the minimum federal requirements is evidence, indeed substantial evidence, that the jacket was not unreasonably dangerous. *See Bellotte v. Zayre Corp.*, 531 F.2d 1100 (1st Cir. 1976) (applying Restatement (Second) of Torts § 402A as adopted by New Hampshire). Nevertheless, we recognize that other courts in addressing this problem have held that compliance with the standard is not conclusive as a measure of defectiveness or unreasonable danger. *See Raymond v. Riegel Textile Corporation*, 484 F.2d 1025 (1st Cir. 1973); *La Gorga v. Kro-*

ger Company, 275 F.Supp. 373 (W.D.Pa. 1967). If the plaintiff produces substantial expert or lay evidence that a fabric which complies with the federal standard is nevertheless unreasonably dangerous for normal use, the plaintiff is entitled to a jury determination.

The expert testimony that Simien attempts to rely on to reach the jury is that of Dr. Harold Simpson, a professor of textiles. Dr. Simpson testified that in addition to measuring the two aspects of fabric flammability prescribed by the federal standards, he also made a determination of the manner in which the fabric burned. His observation was that "the flames here are quite high and there is a great deal of heat generated." When asked whether he considered the fabric to be highly dangerous, Dr. Simpson stated that it was his opinion that "this fabric is highly dangerous once it is ignited." He did not explain how this conclusion was related to the issue of whether a jacket made from the fabric would be unsafe. No comparative analysis was made of the difficulty of ignition plus the rate and intensity of combustion of this fabric vis-a-vis wool, cotton, or other synthetic materials normally used in clothing.

■ Texas courts would not allow Dr. Simpson's facile observation, without more, to support a finding that this particular fabric was unreasonably dangerous for use as jacket material. In reversing a jury verdict for lack of evidence of a design defect, the Supreme Court of Texas in Henderson v. Ford Motor Co., 519 S.W.2d 87, 93 (Tex.1974), had the following to say:

> One witness says that the design could be better . . . . Liability is not predicated upon such bare criticism. The same statements could be made about reasonably safe products . . . .

Similarly, any number of fabrics reasonably safe for normal use as clothing would be highly dangerous once ignited. That an expert concludes a jacket may become dangerous when it has been forced to catch fire is not sufficient proof to impose liability for its sale. Product liability must depend on testimony from which an inference may be drawn that the fabric was unreasonably dangerous for use as a lightweight jacket. In the face of uncontroverted evidence which shows that this fabric was slow-burning and virtually impossible to ignite except when ignition was forced by exposing it for a period of several seconds to a 1650° F. butane flame, the testimony of Dr. Simpson would not support even an inference that it is unreasonably dangerous for use as a jacket.

Simien also attempts to rely on Dr. Simpson's testimony about the characteristics of the different components making up the jacket. The outer and inner shells of the jacket were composed of a nylon fabric commonly used for this kind of jacket, and the fill consisted of a non-homogenous mixture of fibrous material appearing to be about fifty percent cotton. Dr. Simpson tested the outer shell alone and found that the sample ignited in 1.2 seconds and took 11 to 12 seconds to burn. Although these figures are also within the federal standards, the shell appears easier to ignite and to burn faster than the total structure. Dr. Simpson further testified that when cotton is placed against nylon the hazard of flammability generally is increased. From this Simien argues that the jury could have found that combining cotton and nylon increased the hazard and thus constituted a design defect in the jacket. Dr. Simpson's own testimony about this particular jacket, however, precludes this apparently reasonable inference. Although placing cotton against nylon may generally increase the hazard of flammability, Dr. Simpson testified that the total structure here—the nylon shells and partly cotton fill—was harder to ignite and burned slower than its individual components. The jacket fabric was a composite, and nothing in this line of testimony indicates that the composite was unreasonably dangerous for use as a lightweight jacket. Significantly, the only expert testimony in this record regarding the reasonable fitness of this fabric for use as a jacket is that of Kresge's expert George Buck, who stated: "And clearly in my opinion, this product is quite suitable for use as

a jacket. It is not defective in any way from the standpoint of flammability and entirely suitable for use as a jacket."[6]

Simien also argues that the lay evidence alone is sufficient to support the jury's finding that the jacket design was unreasonably dangerous. *See Carter v. Joseph Bancroft & Sons Co.*, 360 F.Supp. 1103 (E.D. Pa.1973); *La Gorga v. Kroger Company*, 275 F.Supp. 373 (W.D.Pa.1967). Relying on *Carter*, Simien argues that the fact that none of his other clothes burned, including his shirt next to the flame on the inside of the jacket, is sufficient to support a finding that the jacket was defective and unreasonably dangerous. In *Carter*, however, the circumstances left no alternative to the conclusion that plaintiff's dress fabric was defective. The eight persons sitting in the room were wearing clothing made of many different fabrics, all were equally exposed for only an instant to a sudden flash, plaintiff was the only one whose clothing ignited, and the top portion of her dress was consumed by flames. Here, the most logical reason that the jacket ignited although the shirt did not is that the jacket was outside the shirt and thus was the only article of clothing exposed to the flaming gasoline fumes. Also, the jacket here did not burst into flames on ignition as did plaintiff's dress in *Carter*; rather, the jacket here remained substantially intact during and after the incident. That portions of the jacket exposed to flaming gasoline fumes ignited and burned while a shirt not exposed to this same flame did not ignite demonstrate only that the normal processes of combustion functioned in this event.

Relying on *La Gorga*, Simien attaches great significance to the eye-witness testimony that the flames came through the collar of the jacket from the inside of the jacket and that the outside of the jacket was not afire. When these observations are combined with the physical evidence that the jacket ignited on the left rear portion, Simien argues that a jury issue on unreasonable dangerousness is made. The lay testimony in *La Gorga* also virtually compelled the conclusion that the fabric there was unreasonably dangerous for use as a child's jacket. A spark from an incinerator ignited the jacket, the flames consumed the jacket making it look like a ball of fire, and the flame was almost impossible to extinguish. Here, it took burning gasoline fumes to ignite the jacket, the jacket burned only in spots and remained substantially intact, and there was no indication that the flame was difficult to extinguish. Testimony that the jacket caught fire in these circumstances and burned in this manner falls far short of proving a design defect unreasonably dangerous to the consumer. That the flame here was sucked up the inside of the jacket and came out of the collar cannot be a basis for liability. The evidence is uncontroverted that this "chimney effect" is a natural physical phenomenon and would exist in any loose-fitting garment.

Wilford Simien has suffered great pain and permanent disfigurement as a result of this unfortunate incident, but the fact of injury alone is not sufficient to impose liability on the seller of the product. *Gravis v. Parke-Davis & Co.*, 502 S.W.2d 863, 868–69 (Tex.Civ.App.1973). The doctrine of strict liability was not intended to make sellers absolute insurers for all physical harm which occurs during use of the product. *Helene Curtis Industries, Inc. v. Pruitt*, 385 F.2d 841, 864 (5th Cir. 1967). Liability depends on substantial evidence that the product is unreasonably dangerous for its intended use, and Simien failed to produce such evidence. The circumstances surrounding the incident, the performance of the jacket during the incident, the per-

---

**6.** Simien called another expert, Mr. Francis Davidson, who testified that his tests had discovered no traces of hydrocarbon material on the jacket. The purpose of this testimony was to support the inference that Simien had spilled no gasoline on the jacket which caused it to ignite. Mr. Davidson admitted, however, that he had no way of knowing whether the jacket might have had gasoline on it at the time of the incident two and one-half years before his tests. Mr. Davidson's testimony in no way tends to prove that this fabric was unreasonably dangerous for use as a jacket.

formance of the jacket during laboratory testing, and expert testimony regarding the jacket all so overwhelmingly demonstrate that the jacket was not inherently dangerous that the trial judge should have taken the case from the jury and rendered a verdict for Kresge.

Since we reverse and direct the rendition of a verdict, we need not address Kresge's remaining contentions.

REVERSED and RENDERED.