**WOLVERTON FARMERS ELEVATOR, Appellant,**

v.

**FIRST AMERICAN BANK OF RUGBY, Appellee.**

No. 87–5532.

United States Court of Appeals, Eighth Circuit.

Submitted June 3, 1988.

Decided July 7, 1988.

---

Jeffrey R. Hannig, Moorhead, Minn., for appellant.

Brooks F. Poley, St. Paul, Minn., for appellee.

Before HEANEY, BOWMAN, and BEAM, Circuit Judges.

PER CURIAM.

Wolverton Farmers Elevator (Wolverton) appeals from the magistrate's [1] order dismissing its diversity action seeking to recover the face value (plus interest) of four checks on which it was the payee. Following a hearing, the magistrate found that the checks drawn on appellee First American Bank of Rugby (First American) and returned for insufficient funds were not presented for purposes of the midnight deadline rule, N.D.Cent.Code § 41–04–26 (Repl.1983) [U.C.C. § 4–302]. We affirm.

Wolverton is a farmers' cooperative elevator located in Wolverton, Minnesota. In 1985 and early 1986 Wolverton was a supplier of corn to Dakota Crackin', Inc., a poultry operation located in Devils Lake, North Dakota. In December 1985 checks received by Wolverton from Dakota Crackin', Inc., and drawn on First American (the payor bank), were returned due to insufficient funds in Dakota Crackin', Inc.'s account.

On January 13, 1986, Dakota Crackin', Inc. prepared two checks, numbers 7951 and 7952, in the amounts of $6,940.55 and $6,985.00, and sent them to Wolverton. When Wolverton received the checks on January 14, 1986, Allen Mashek, the manager of Wolverton at the time, took them to Wolverton's bank, First National Bank of Breckenridge (First National) (the depositary bank) and had them forwarded directly to First American. Mashek testified that the checks were to be sent directly to First American to be presented for immediate payment. The teller at First National completed an "advice" form for the checks. Under the column entitled "Due" on the advice form is the word "now." The bottom of the advice form contains the following language:

Surrender documents only upon payment. Credit or remit only when paid. Do not hold after maturity or for the convenience of the payor. Return immediately if not paid, giving full reason. No protest, unless otherwise instructed.

The same collection procedure was followed for checks number 7956 and 7959, both in the amounts of $6,985.00, and received by Wolverton on January 15, 1986, and January 17, 1986, respectively.

Danny Stroh, an officer of First American, called Rick Steckler of First National to inquire as to how First American should treat the checks. Steckler informed Stroh that he did not know Wolverton's intentions concerning the checks. Stroh requested a letter from First National stating that the checks be held for ten days to see if sufficient funds came into Dakota Crackin', Inc.'s account, but Steckler refused to draft such a letter.

First American ultimately treated the checks as "collection items," which are items forwarded outside normal banking channels and accompanied by an advice form; such items are held for a period of time while the account is checked each day for adequate funds. Stroh testified that his interpretation of the word "now" in the advice form under the column "Due" was that the underlying obligation for the check was due rather than that the check was to be either immediately paid or returned.

At the request of Wolverton's attorney, the checks were sent to First National on January 23, 1986. In early February 1986 Dakota Crackin', Inc. was adjudicated a bankrupt, and Wolverton never received payment for the amounts represented by the four checks at issue in this case.

On August 8, 1986, Wolverton instituted this diversity action in federal district court, alleging that First American failed to return the checks within a twenty-four hour period as required by the midnight

1. The Honorable Karen K. Klein, United States Magistrate for the District of North Dakota. Pursuant to 28 U.S.C. § 636(c) (Supp.1988), this case was referred to a magistrate by consent of the parties.

deadline rule, N.D.Cent.Code § 41–04–26 [U.C.C. § 4–302],[2] thus making First American liable for their face value. First American responded that the checks were sent merely "for collection" and were not "presented" for payment as required by the statute in order to trigger the midnight deadline rule.

A non-jury trial was held on September 14, 1987, at which Allen Mashek, Rick Steckler, and Danny Stroh testified. On November 16, 1987, the magistrate entered judgment for First American, finding that the four checks sent directly to First American were sent for collection as opposed to presented for immediate payment. The midnight deadline rule was thus inapplicable, and First American's only obligation was to return the checks within a reasonable time. The court found that the evidence did not support Wolverton's argument that it had the clear intent to make a present demand for payment. The court further found that the advice forms attached to the checks contained ambiguous language which should be construed against the drafter, see N.D.Cent.Code § 9–07–19 (Repl.1975), and that First American was therefore not accountable for this ambiguity. This appeal followed.

■ On appeal, Wolverton reiterates its argument that the four checks "were presented for payment" within the meaning of the statute and that the midnight deadline rule therefore applied. Wolverton contends that because there was no agreement varying the terms of the midnight deadline rule, First American is liable for the face value of the checks.

■ This court is bound by the district court's findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a).

" '[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). And absent a fundamental deficiency in analysis or a lack of reasoned authority, this court defers to the district court's interpretation of the law of the state in which the district court sits. *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.,* 825 F.2d 167, 171 (8th Cir.1987).

■ Under N.D.Cent.Code § 41–04–26, only if the checks were presented for immediate payment does the midnight deadline rule apply. "Presentment is a demand for acceptance or payment made upon the maker, acceptor, drawee, or other payor by or on behalf of the holder," N.D.Cent.Code § 41–03–60(1) (Repl.1983), [U.C.C. § 3–504(1) ], and requires a present demand for payment. *Western Air & Refrigeration, Inc. v. Metro Bank,* 599 F.2d 83, 88 (5th Cir.1979). Presentment can be waived, in which case the indorser or payee has no basis for complaint if the payor bank fails to give a timely notice of dishonor. J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code, § 13–10, at p. 510 (2d ed. 1980). In addition, an exception to the midnight deadline rule exists where an agreement is reached between the payor bank and the payee that the bank should retain the check. *Corsica Livestock Sales v. Sumitomo Bank,* 726 F.2d 374, 377 (8th Cir.1983).

2. This statute provides in pertinent part:
*Payor bank's responsibility for late return of item.*
In the absence of a valid defense such as breach of a presentment warranty ..., settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of:
1. A demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline.... N.D.Cent.Code § 41–04–26. A bank's midnight deadline "is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." N.D.Cent.Code § 41–04–04(1)(h) (Repl.1983).

In the present case, the magistrate determined from the trial testimony and advice forms attached to each check that the forms contained ambiguous language—some language apparently requesting payment now and other language apparently requesting payment whenever sufficient funds were available. Under North Dakota law, a document containing ambiguous language should be construed against the drafter, *see Graber v. Engstrom,* 384 N.W.2d 307, 309 (N.D.1986), and pursuant to N.D.Cent.Code § 41–04–11 (Repl.1983) [U.C.C. § 4–201], a collecting bank acts as an agent for the owner of an item for the purposes of presentment, payment, and collection, unless a contrary intent is apparent. Thus, any ambiguous language in the advice form is also to be construed against Wolverton as First National's principal.

■ The magistrate made a factual finding that no presentment for payment was made, but, rather, that the checks sent directly to First American were sent for collection. Leaving a check with a bank to pay when the account on which it is drawn has sufficient funds does not constitute a presentment. *See Western Air & Refrigeration,* 599 F.2d at 89. Upon careful review of the record, we conclude that it supports the magistrate's findings and conclusion that the midnight deadline rule was inapplicable.

Because the magistrate's finding that no presentment occurred is not clearly erroneous, Wolverton's argument that no agreement existed between the parties to waive the midnight deadline rule does not need to be reached.

Accordingly, the judgment of the district court is affirmed.