896 F.2d 148
 Prod.Liab.Rep.(CCH)P 12,421
Janice Grafton LORENZ, Individually and as Personal
Representative of the Heirs and Estate of Paul D.
Lorenz, Deceased, Plaintiff-Appellant,
v.
The CELOTEX CORPORATION, Defendant-Appellee.
 No. 89-1136.
 United States Court of Appeals,
Fifth Circuit.
 March 16, 1990.
Rehearing and Rehearing En Banc Denied April 16, 1990.
 
 Brent M. Rosenthal, Baron & Budd, Dallas, Tex., for plaintiff-appellant.
 Donald J. Verplancken, Elizabeth M. Thompson, Thomas W. Taylor, Kevin T. Hedges, Butler & Binion, Houston, Tex., for defendant-appellee.
 On Appeal from the United States District Court for the Northern District of Texas.
 Before GEE, JONES, and SMITH, Circuit Judges:
 EDITH H. JONES, Circuit Judge:
 
 
 1
 Plaintiff Janice Grafton Lorenz brought this products liability action, alleging that her husband died of lung cancer as a result of his exposure to asbestos products manufactured by defendant, the Celotex Corporation. After a jury trial, the jury returned a verdict in favor of Celotex. Lorenz appeals, claiming that the district court erroneously instructed the jury that compliance with government safety standards constitutes strong and substantial evidence that a product is not defective. We affirm.
 
 BACKGROUND
 
 2
 Paul Lorenz died of lung cancer in 1981. His widow, Janice Grafton Lorenz, alleges that his illness was the result of his exposure to asbestos insulation products while he served as a boiler technician aboard a United States Navy vessel from 1966 to 1968. As a boiler technician, Lorenz periodically removed and replaced the asbestos insulation on the pipes and valves in the boiler room. He also occasionally installed asbestos millboard around the boilers. At least some of the insulation and millboard used was manufactured by the Philip Carey Company, predecessor-in-interest of defendant Celotex.
 
 
 3
 Seeking to recover damages for her husband's wrongful death, Mrs. Lorenz filed this action against thirteen different asbestos manufacturers. Mrs. Lorenz sought recovery on both negligence and strict liability grounds based on the manufacturers' failure to warn of the hazards of working with asbestos. All the defendants except Celotex settled or were dismissed prior to trial.
 
 
 4
 On January 9, 1989 the case proceeded to trial, with Celotex as the sole defendant. Plaintiff offered the testimony of expert witnesses who indicated that asbestos was a substantial factor in her husband's illness, and presented evidence that Celotex had failed to warn of any such danger. Celotex attempted to establish that its products were not defective or unreasonably dangerous by presenting evidence that use of its insulation products produced asbestos dust counts below the maximum level established by the official and unofficial safety standards in place at the time of Lorenz's exposure. At the close of the evidence, the district court, upon Celotex's request, instructed the jury that:
 
 
 5
 Compliance with government safety standards constitutes strong and substantial evidence that a product is not defective.
 
 
 6
 The jury returned a verdict in favor of Celotex on both the strict liability and negligence claims, and the district court entered judgment for Celotex. Lorenz appeals, contending that the district court erred by giving the instruction on compliance with government standards because (1) the instruction was substantively incorrect, and (2) there was no evidence to support the instruction.
 
 DISCUSSION
 A. Substantive Correctness
 
 7
 The language of the challenged instruction comes directly from this court's opinions in Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1144 (5th Cir.1985), and Dartez v. Fibreboard Corp., 765 F.2d 456, 471 (5th Cir.1985) (quoting Gideon ). In Gideon, a plaintiff who had contracted asbestosis sought to recover damages from several asbestos manufacturers, including Raymark Industries, Inc. The jury determined that Raymark's asbestos textile products were defective and held the company liable for the plaintiff's injuries. On appeal, the court reversed the judgment against Raymark because there was insufficient evidence to support the findings against it. Gideon, 761 F.2d at 1143-45. In reaching its decision, the court placed great weight on the fact that Raymark's products complied with the applicable government safety standards.[1] Id. at 1144. The court noted that "[c]ompliance with such government safety standards constitutes strong and substantial evidence that a product is not defective." Id. Similarly, in Dartez the court reversed another judgment against Raymark Industries on insufficiency of evidence grounds. Dartez, 765 F.2d at 470-71. Once again the court relied heavily on the fact that Raymark's products complied with applicable government standards, quoting Gideon for the proposition that such compliance is strong and substantial evidence that a product is not defective. Id. at 471.
 
 
 8
 Despite the fact that the district court took its instruction from Gideon and Dartez, Lorenz contends that the instruction was substantively incorrect for several reasons. First, she argues that the language in those opinions was intended merely as a comment on the weight of the particular evidence in those cases, not as a general rule of law. Even a casual reading of Gideon and Dartez belies Lorenz's interpretation. In each case the court states the rule as a general proposition, without qualifying the statement to the particular facts of the case. Gideon, 761 F.2d at 1144; Dartez, 765 F.2d at 471. In addition, each opinion cites authority to support the proposition.[2] We cannot agree with Lorenz that the language in Gideon and Dartez was not intended to state a general rule of law.[3]
 
 
 9
 Lorenz next argues that the instruction is substantively incorrect because it is unsupported by Texas law. Lorenz correctly points out that in diversity cases, jury instructions must accurately describe the applicable state substantive law. Turlington v. Phillips Petroleum Co., 795 F.2d 434, 441 (5th Cir.1986). It appears that no Texas case has expressly stated that compliance with government standards constitutes strong and substantial evidence that a product is not defective. However, the court's instruction in this case correctly states the applicable law.
 
 
 10
 As mentioned above, the language of the court's instruction comes directly from this court's opinions in Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129 (5th Cir.1985), and Dartez v. Fibreboard Corp., 765 F.2d 456 (5th Cir.1985). Both Gideon and Dartez were diversity cases applying Texas law, and in both cases the court determined that compliance with government safety standards is strong and substantial evidence that a product is not defective.[4] Lorenz has not cited, and the court has not found, any Texas cases establishing a rule that compliance with government standards is less than strong and substantial evidence.[5] See 59 TEX.JUR.3d Products Liability Sec. 67 (1988) (reporting that the rule in Texas is that "[e]vidence of compliance with government safety standards does constitute strong and substantial evidence that a product is not defective ..."). In the absence of controverting Texas authority, the district court and this court are bound by the interpretation of Texas law expressed in Gideon and Dartez. See Broussard v. Southern Pacific Transportation Co., 665 F.2d 1387, 1389 (5th Cir.1982). Accordingly, we conclude that the district court's instruction was substantively correct.
 
 B. No Evidence
 
 11
 Lorenz also contends that the district court erred by giving the instruction because Celotex did not present any evidence that its products complied with an applicable government standard. A district court may not instruct a jury on a legal theory on which no evidence is presented. Neubauer v. City of McAllen, 766 F.2d 1567, 1575 (5th Cir.1985). However, in this case, Celotex introduced sufficient evidence to permit the court to instruct the jury that compliance with government safety standards constitutes strong and substantial evidence that a product is not defective.
 
 
 12
 Lorenz first argues that Celotex failed to present evidence of a government standard applicable to this case. We disagree. At trial, Celotex presented evidence that until the end of the 1960's, exposure to asbestos dust counts below five million particles per cubic foot was generally considered safe. This standard was first proposed in a 1938 Surgeon General's Report, known as the Dressen Report after its principal author. The American Conference of Governmental Industrial Hygienists, a "quasi-official body responsible for making recommendations concerning industrial hygiene," Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076, 1084 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), adopted the five million particle per cubic foot standard as the threshold limit for safe exposure to asbestos in 1946, and reaffirmed the standard in 1961 and 1964. State governments also adopted the five million particle per cubic foot standard. In 1945, the state of New York, where Lorenz resided at the time of his death, adopted the five million standard. Ohio, where Philip Carey had its headquarters and principal insulation plant, adopted the standard in 1947. Most importantly, the state of Texas, whose law governs this case, adopted the five million particles per cubic foot standard in 1958. It was not until after the period of Paul Lorenz's exposure that governments began to reduce the acceptable asbestos dust count.
 
 
 13
 Lorenz contends that none of the government standards offered by Celotex should apply in this case because none of those standards applies to the labeling of asbestos products. This argument cannot withstand analysis. To establish Celotex's liability for failure to warn of the dangers of using its products, Lorenz had to prove that Celotex "knew or should have known of such dangers at the time the products were marketed." Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1145 (5th Cir.1985). Evidence of compliance with government safety standards (here, evidence that use of Celotex's insulation products produced dust counts below the threshold limit) constitutes strong and substantial evidence that a product is not defective. See Id. at 1144. Thus, evidence that use of Celotex's products produced dust counts below the threshold limit is, logically, strong and substantial evidence that Celotex did not know or should not have known that its products were so dangerous or defective that they required a warning. Accordingly, we conclude that Celotex presented evidence of an applicable government standard.
 
 
 14
 Likewise, Celotex presented sufficient evidence that it complied with the applicable standards. First, Celotex introduced the results of several studies of asbestos exposure among insulation workers. In each case, the study concluded that exposure levels were below the five million particles per cubic foot threshold. Second, Celotex offered uncontroverted evidence that to the extent that its products differed from those being used in the studies it introduced, Celotex's insulation was less dusty. Arthur Mueller, a former research and development worker at Philip Carey, testified that Philip Carey's products contained a smaller percentage of asbestos than the competition's. He also testified that Philip Carey's insulation was designed to be cut with a knife rather than a saw, came with preformed fittings, and used an asbestos-free cement. Taken together, the evidence that asbestos counts for insulation workers in general were below the safety standard and that Celotex's products were less dusty than the typical insulation product constitutes evidence that Celotex's products complied with the five million particles per cubic foot standard.
 
 CONCLUSION
 
 15
 The trial court did not err by instructing the jury that compliance with government safety standards constitutes strong and substantial evidence that a product is not defective. The instruction was substantively correct and was supported by the evidence. Therefore, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The court also relied on evidence such as the facts that the plaintiff had only slight contact with Raymark's products and that Raymark's products were manufactured in ways that "locked in" the asbestos fibers contained in the product
 
 
 [2]
 Gideon relies on Simien v. S.S. Kresge Co., 566 F.2d 551, 557 (5th Cir.1978). In Simien, the defendant argued that a jacket it manufactured was not defective because it complied with government flammability standards. The court noted that such testimony was "evidence, indeed substantial evidence, that the jacket was not unreasonably dangerous." Simien, 566 F.2d at 557
 
 
 [3]
 Lorenz also contends that the court erred by giving the instruction because it should not have used language from appellate opinions in its charge. Such language may sometimes be too complex or technical to properly inform a jury, see United States Lines Co. v. Williams, 365 F.2d 332, 334-35 (5th Cir.1966). But where, as here, language from an appellate opinion provides a simple and concise statement of the law, we are unwilling to conclude that the court abused its discretion by incorporating the language into its charge. See Turlington v. Phillips Petroleum Co., 795 F.2d 434, 441 (5th Cir.1986) (district court has discretion in structuring the form of its instructions to the jury)
 
 
 [4]
 Simien v. S.S. Kresge Co., 566 F.2d 551 (5th Cir.1978), cited by Gideon for the rule that compliance constitutes strong and substantial evidence, was also a diversity case applying Texas law. Neither Gideon, Dartez, nor Simien cites a Texas case in support of the rule
 
 
 [5]
 Lorenz relies on Bristol-Meyers Co. v. Gonzales, 561 S.W.2d 801 (Tex.1978); Golden Villa Nursing Home, Inc. v. Smith, 674 S.W.2d 343 (Tex.App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.); and Rumsey v. Freeway Manor Minimax, 423 S.W.2d 387 (Tex.Civ.App.--Houston [1st Dist.] 1968, no writ), but none of those cases supports Lorenz's argument that compliance with government safety standards is less than strong and substantial evidence. Rather, those cases stand for the general proposition that compliance with government standards usually does not insulate a defendant or automatically preclude a finding of liability. E.g., Bristol-Meyers Co. v. Gonzales, 561 S.W.2d at 804 (compliance with F.D.A. warning requirements did not preclude liability for inadequate warning); see also Simien v. S.S. Kresge Co., 566 F.2d 551, 557 (5th Cir.1978) (while evidence of compliance with government standards was strong and substantial evidence, it was not conclusive on the issue of liability)