928 F.2d 399
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles E. CANTERBURY, Plaintiff-Appellee,
v.
MERCEDES-BENZ OF NORTH AMERICA, INC., Defendant-Appellant.
 No. 89-2502.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1990.
Decided March 11, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CA-88-1637-5)
 Kevin Alfred Nelson, Kay, Casto, Chaney, Love & Wise, Charleston, W.Va., argued for appellant.
 Ralph C. Young, Hamilton, Mooney, Burgess, Young & Tissue, Oak Hill, W.Va., argued for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Mercedes-Benz of North America, Inc. (Mercedes-Benz) appeals the district court's denial of its two motions for directed verdict based upon plaintiff's, Charles E. Canterbury's, alleged failure to satisfy the requirements of W.Va.Code Sec. 46A-6A-5(c) by providing written notice and an opportunity to repair to Mercedes-Benz prior to revocation.[1] Appellant also appeals the damages award and the court's award to plaintiff of his attorney's fees in the amount of one-third the judgment.
 
 
 2
 * Canterbury purchased a new 1987 Mercedes-Benz on March 9, 1987, for a purchase price excluding taxes and other fees of $47,750.00. Initially, he had no difficulties with the car. With approximately 700 miles on the odometer, Canterbury took a lengthy trip to Ohio and en route experienced mechanical difficulties when the vehicle lost power and "idled" or "dieseled." When Canterbury brought the car to the Mercedes-Benz dealership on July 6, 1987, it was unable to determine the cause of the problem. The vehicle was returned to the dealership between two to five times before December 1987.
 
 
 3
 On December 29, 1987, a mechanic employed by the selling dealer experienced the problems while driving the automobile. He conceded at trial that the engine would stop without warning causing loss of the power assisted brakes, the power assisted steering and the antilock brake feature. He identified what he believed to be the problem--a hose that connected the main fuel line to the front of the engine was too long, and as a result, would collapse when hot, cutting off the fuel to the engine. He testified that after this problem was discovered and remedied, the automobile was in good repair and its problem was corrected.
 
 
 4
 However, Canterbury continued to encounter difficulties. On June 17, 1988, the car stalled on a four lane highway. The mechanic retrieved the vehicle and attempted to drive it to the dealership when the engine cut-out again. On July 4, Canterbury again experienced loss of engine power and the vehicle was returned to the dealership on July 5, 1988, with instructions to keep it until repaired.
 
 
 5
 On July 21, 1988, through his attorney, plaintiff sent a letter revoking acceptance of the vehicle, demanding a refund of the purchase price and otherwise asserting his rights under the lemon law.
 
 II
 
 6
 This case requires interpretation of various provisions of W.Va.Code Sec. 46A-6A-1 through 10 (1986). Accordingly, "interpretations by the district judge of state law from the state in which he sits are entitled to deference. The district court's determination will be accepted on review unless shown to be clearly wrong." Major v. Arizona State Prison, 642 F.2d 311, 313 (9th Cir.1981). See also Wolverton Farmers Elevator v. First American Bank of Rugby, 851 F.2d 223, 225 (8th Cir.1988).
 
 Subsection 5(c) provides:
 
 7
 The presumption that a reasonable number of attempts have been undertaken to conform a new motor vehicle to the applicable express warranties applies against the manufacturer only if the manufacturer has received prior written notification from or on behalf of the consumer and has at least one opportunity to cure the defect alleged.
 
 
 8
 Appellant, Mercedes-Benz, insists that it was not given written notification of a defect, nor was it given the opportunity to repair, as required by subsection (c). Therefore, it maintains that the district court erred in instructing the jury as to the presumptions in subsections 5(a) and 5(b).[2] Finding that the plaintiff below was entitled to the jury instruction at issue, we affirm.
 
 
 9
 There was testimony that a Mercedes-Benz factory representative regularly visited the dealership and met with the customers, establishing that the manufacturer had written notice by virtue of its review of the work orders.
 
 
 10
 Q. ... Mr. Rowley, does he actually work for MercedesBenz?
 
 
 11
 A. At the time, he was a factory rep at our dealership.
 
 
 12
 Q. And he came on a regular basis to,--
 
 
 13
 A. Yes, sir.
 
 
 14
 Q. --to meet with you and customers?
 
 
 15
 A. Yes, he did.
 
 
 16
 Q. And, in fact, he met with Mr. Canterbury and talked with him about his stalling or quitting problem, didn't he?
 
 
 17
 A. Yes, he did.
 
 
 18
 Q. When this man from Mercedes-Benz comes into the dealership on a regular basis, he has access to these work orders, doesn't he?
 
 
 19
 A. Yes, he does.
 
 
 20
 Q. In fact, that's the first thing he does is go back and review the service history of a vehicle, go to those work orders?
 
 
 21
 A. I think so.
 
 
 22
 Q. So when this man from Mercedes-Benz was in there on a regular basis, he had available to him these various written work orders showing the problem that Mr. Canterbury was complaining about, didn't he?
 
 
 23
 A. Yes.
 
 
 24
 Accordingly, we affirm the district court's finding that the manufacturer received written notice over a period of time and had ample opportunity to repair Canterbury's vehicle.
 
 
 25
 Mercedes-Benz questions the district court's decision estopping it from asserting the W.Va.Code Sec. 46A-6A-5 prerequisites of notice and an opportunity to cure because it failed to comply with W.Va.Code Sec. 46A-6A-6.[3] Since we conclude that the manufacturer was given notice and an opportunity to cure, we find it unnecessary to address appellee's estoppel argument.
 
 III
 
 26
 Appellant next argues that the court should have instructed the jury to consider the diminution in value of the automobile due to its extensive use in determining damages.[4] It is well settled that the jury should be instructed on a legal theory if the evidence adduced at trial is sufficient to justify such an instruction. Lorenz v. Celotex Corp, 896 F.2d 148 (5th Cir.1990), reh'g denied, 901 F.2d 1110 (5th Cir.1990); Farrell v. Klein Tools, Inc., 866 F.2d 1294 (10th Cir.1989).
 
 
 27
 No evidence was presented at trial to warrant a diminution of value jury instruction. Appellant offered no evidence of any devaluation of the vehicle, did not attempt to value plaintiff's use of the vehicle and abandoned this contention at oral argument.
 
 IV
 
 28
 The Act provides that a successful plaintiff is entitled to "reasonable attorney's fees." W.Va.Code Sec. 46A-6A-4(b)(a). It is well established that the allowance of attorney's fees is within the discretion of the trial judge, who has close and intimate knowledge of efforts expended and the value of the services rendered. An appellate court should not overturn the trial court's judgment unless, under all of the facts and circumstances, it is clearly wrong. Barber v. Kimbrell's Inc., 577 F.2d 216, 226 (4th Cir.1978), cert. denied, 439 U.S. 934 (1978) (citing Lea v. Cone Mills Corp., 467 F.2d 277, 279 (4th Cir.1972)).
 
 
 29
 Mercedes-Benz objects to the award of one-third of the judgment as attorney's fees and Mercedes-Benz insists that the court incorrectly relied upon Hayseeds v. State Farm Fire & Casualty Co., 352 S.E.2d 73 (W.Va.1986), as the controlling case law on the issue. It maintains that Committee of Legal Ethics v. Tatterson, 352 S.E.2d 107 (W.Va.1986), more accurately states the law in West Virginia on the issue.
 
 
 30
 Hayseeds concerns an insured suing his insurance company for policy proceeds. The Court held,
 
 
 31
 [p]resumptively, reasonable attorneys' fees in this type of case are one-third of the face amount of the policy, unless the policy is either extremely small or extremely large. This follows from the contingent nature of most representation of this sort and the fact that the standard contingent fee is 33 percent. But when a claim is for under $20,000.00 or for over $1,000,000.00 (to take numbers that are applicable in 1986), the Court should then inquire concerning what "reasonable attorney fees" are.
 
 
 32
 Id. at 80. A case in which an attorney represents a client under an automobile warranty contract is clearly the type of case included under Hayseeds. The lower court's decision is not clearly erroneous.
 
 Accordingly, this case is
 
 33
 AFFIRMED.
 
 
 
 [1]
 The jury rendered a verdict on behalf of the plaintiff, granting him revocation of his purchase contract, refund of the purchase price of his vehicle in the amount of $56,361.89, and damages for annoyance and inconvenience in the amount of $10,000.00. Defendant filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial, based upon the same grounds as its motion for a directed verdict
 
 
 [2]
 These subsections provide:
 (a) It is presumed that a reasonable number of attempts have been undertaken to conform a new motor vehicle to the applicable express warranties, if the same nonconformity has been subject to repair three or more times by the manufacturer, its agents or its authorized dealers within the express warranty term ... and the nonconformity continues to exist....
 (b) If the nonconformity results in a condition which is likely to cause death or serious bodily injury if the vehicle is driven, it is presumed that a reasonable number of attempts have been undertaken to conform the vehicle to the applicable express warranties if the nonconformity has been subject to repair at least once by the manufacturer within the express warranty term ... and the nonconformity continues to exist.
 
 
 [3]
 Section 6 requires the manufacturer to provide the consumer, at the time of purchase, with a written statement specifying that the consumer may be entitled to a replacement vehicle or to compensation, so long as the consumer notifies the manufacturer of the problem and provides the manufacturer with the opportunity to repair
 
 
 [4]
 The appellee possessed the car for sixteen months and had over 26,000 miles on the odometer at the time of revocation