J-A09022-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| TRACY TRUAX, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TANYA P. ROULHAC, WILDWOOD 115, INC. AND SILVIO VITIELLO, | |
| Appellees | No. 1797 EDA 2013 |

Appeal from the Order Entered June 11, 2013
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 9958 Civil 2010

BEFORE: BOWES, OTT, and JENKINS, JJ.

DISSENTING MEMORANDUM BY BOWES, J.: **FILED SEPTEMBER 24, 2014**

I agree with my distinguished colleagues that Ms. Truax was a business invitee of Madd Anthony's Bar, and that Silvio Vitiello and Wildwood 115, Inc. ("Wildwood"), as landowners, had a duty to exercise reasonable care to protect her from the foreseeable misconduct of third parties.[1] **See**

---

[1] The duty that a possessor of land owes to an invitee is "the highest duty owed to any entrant upon land." **See Gillingham v. Consol Energy, Inc.**, 51 A.3d 841, 850 (Pa.Super. 2012) (quoting **Gutteridge v. A.P. Green Services, Inc.**, 804 A.2d 643, 656. (Pa.Super. 2002)). "The landowner must protect an invitee not only against known dangers, but also against those which might be discovered with reasonable care." **Id**. He is "subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it,
*(Footnote Continued Next Page)*

Restatement (Second) of Torts, § 344. However, the majority affirms the entry of summary judgment in favor of Mr. Vitiello and Wildwood on a ground that was neither raised below nor relied upon by the trial court.[2] It finds Ms. Truax's expert engineering report insufficient because it "fails to relate the appropriate engineering standards for the design of a parking lot and the use of wheel stops[,]" and accordingly, a deviation from those standards. Majority Memorandum, 7/24/14, at 7-8. I believe the majority applied the wrong legal standard in determining the sufficiency of expert testimony, and hence, I dissent. For the reasons that follow, I would reverse the order granting summary judgment and remand for further proceedings.

_(Footnote Continued)_ _____

and (c) fails to exercise reasonable care to protect them against the danger." **Id**. (quoting Restatement (Second) of Torts § 343).

[2] I would also reverse the grant of summary judgment due to the incorrect rationale of the trial court. The trial court erroneously defined the possessor of land's duty to use reasonable care on the facts herein as a duty to erect vertical bollards. Then it concluded, as a matter of law, that since no Pennsylvania court has held that a business owner was negligent for failing to install vertical bollards in addition to wheel stops, it would not do so here. I believe Appellees, as possessors of land, were obligated to use the highest degree of care to protect Ms. Truax from injury due to defects on their property. In addition, they had a duty of reasonable care to protect her from the foreseeable intentional and negligent conduct of third parties while she was on their property. There is evidence in the record from which one can reasonably infer that Appellees knew or had notice of the danger but failed to take reasonable steps to alleviate it. The issue should have been presented to the jury.

While this Court may affirm on any basis supported by the record, I do not believe that summary judgment should be affirmed on a ground that was not articulated in the trial court, and, consequently, upon a record that was not fully developed. This result is tantamount to an ambush. Had this basis for summary judgment been asserted below, Ms. Truax arguably could have provided a supplemental expert report or proffered additional evidence to cure any perceived deficiency.

I believe the majority's conclusion that the engineering expert's report was insufficient because he did not identify and rely upon "engineering standards" to establish the standard of care and a breach of that standard ignores the very essence and purpose of expert testimony. We not only permit persons qualified by their knowledge, education, and experience to render opinions as experts regarding the standard of care and breach of that standard, we require it in many instances. **See** Medical Care Availability and Reduction of Error (MCare) Act, 40 P.S. § 1303.512 (governing expert qualifications in medical negligence cases). The expert opinion itself constitutes evidence. In the instant case, Mr. D'Angelo's opinion regarding the standard of care is evidence just as competent as evidence of engineering standards.

In his expert report, Mr. D'Angelo explained that the subject property lacked curbs four to six inches in height separating the parking lot spaces from the sidewalk. Where the parking spaces met the sidewalk, there were

no bollards, which are concrete or metal vertical posts that act as a barrier to vehicles, although bollards were used to protect a well on the property. Five-inch concrete wheel stops defining the end of the parking spaces provided the only protection for pedestrians using the sidewalk. It was undisputed that the Roulhac vehicle, a van, was undeterred by the wheel stops when it drove onto the sidewalk and struck Ms. Truax.

The expert also noted visible damage to one of the bumped-out sections of the building, which he opined was caused by a motor vehicle. One could reasonably infer from such evidence that a motor vehicle had previously encroached beyond the parking spaces and that the possessors of land had prior notice of the danger and the inadequacy of wheel stops as a precaution. Based on his inspection of the property, his education, experience, and knowledge, the expert opined to a reasonable degree of professional certainty that in order to meet the standard of care,

> "2. Sidewalks would be continuous and separated from the parking field with vertical curb at sidewalk of at least 5 inches and bollards would have been installed to protect pedestrians in the same way that they have been installed on site to protect the property[.]"

Report of James D'Angelo, P.E., 8/30/12, at 8.

The majority mistakenly holds that the expert was required to "describe the relevant engineering standards for the design and construction of a parking lot," and then demonstrate how Madd Anthony's Bar parking lot deviated from the standard, and how the deviation led to the injuries in

- 4 -

question, all to a reasonable degree of engineering certainty. Majority Memorandum, 7/24/14, at 7. It reasons that since the expert failed to provide engineering standards for parking lot design, he obviously failed to establish a deviation from those standards, and thus, there was no evidence of breach.

The majority confuses engineering standards with the standard of care. Industry standards and safety codes are not the conclusive factors in determining negligence, but merely provide some evidence of the appropriate standard of care. *McKenzie v. Cost Brothers, Inc. v. Dickerson Structural Concrete Corp.*, 409 A.2d 362 (Pa. 1979). The record is silent on whether engineering standards exist for the use of wheel stops or bollards in parking lots. Nonetheless, the standard of care can be supplied by a qualified expert, as was the case herein, provided the opinion has an adequate basis in fact. *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 849 (Pa.Super. 2012). The basis for the expert's opinion in this case was his personal inspection of the site, and his knowledge, education, and experience in the field of engineering.

Finally, in reaching its conclusion, the majority failed to view the expert report and other evidence of record in the light most favorable to the non-moving party in derogation of our standard of review. Not only did Ms. Truax provide the expert report of James D'Angelo, P.E. of TEC, Inc., she also submitted the affidavit of William Breuer, a gentleman who has

operated a strip mall for forty-two years that is located to the south of Madd Anthony's Bar and La Roma Pizza. Forty years ago, Mr. Breuer installed posts, also known as bollards, between the head-on parking area and the sidewalk that runs in front of his strip mall. He recited in his affidavit that he installed the posts because he "understood there was a safety issue with head-on parking directly facing a pedestrian walkway." Affidavit of William Breuer, 8/8/12, Answer to Defendant Wildwood 115, Inc.'s Motion for Summary Judgment Exhibit D1. He recalled that, in the past, there were large rocks placed between Madd Anthony's pedestrian walkway and the head-on parking spaces. *Id*. The rocks were removed after a vehicle pushed one of the rocks into the building. *Id*. He also noted that posts were used on the defendants' property to protect the well cap, but not in a location to protect pedestrians. *Id*.

One can reasonably infer from Mr. Breuer's affidavit that it was not only foreseeable motor vehicles would encroach on the sidewalk, but that it had previously occurred on the subject premises. As a similarly situated possessor of land who holds his property open to the public, and who has parking spaces adjacent to a pedestrian walkway, Mr. Breuer appreciated the danger to pedestrians from encroaching vehicles. As a precaution, he installed bollards forty years ago. Such evidence is probative of the

objective reasonableness of Mr. Vitiello and Wildwood's conduct in failing to take similar measures to protect their invitees.[3]

Thus, I believe Ms. Truax has presented sufficient evidence of a lack of reasonable care on the part of Mr. Vitiello and Wildwood to avoid summary judgment. The professed compliance of Mr. Vitiello and Wildwood with local ordinances and regulations, which were neither identified nor made part of the certified record, does not absolve these Defendants of liability for negligence. Had they actually demonstrated compliance with those minimum standards, it would merely have established that Appellees were not negligent *per se*. **See Berkebile v. Brantly Helicopter Corp.**, 281 A.2d 707, 710 (Pa.Super. 1971) (*en banc*) (holding "[c]ompliance with a law or administrative regulation relieves the actor of negligence per se, but it does not establish as a matter of law that due care was exercised.").

For all of the foregoing reasons, I respectfully dissent.

_____

[3] One might argue that the affidavit of Mr. Breuer, a layperson, obviated the necessity for expert testimony in the instant case. The inferences that can be drawn from Mr. Breuer's testimony are rationally based on his own perceptions and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. **See** Pa.R.E. 701; **see also Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)**, 861 A.2d 938 (Pa. 2004) (holding that Rule 701 contemplates admission of lay opinions based on personal knowledge and which are helpful to the trier of fact).